**John L. WRIGHT, Plaintiff–Appellant,**

v.

**Terry L. MORRIS, et al., Defendants–Appellees.**

Nos. 95–1837, 95–6451, 95–4160, 95–6366.

United States Court of Appeals,
Sixth Circuit.

April 11, 1997

Thaddeus–X, briefed, Jackson, MI, pro se.

Paul D. Reingold, argued and briefed, Michigan Clinical Law Program, Ann Arbor, MI, for plaintiffs in No. 95–1837.

Earnest Bee, Jr. Jackson, MI, pro se.

Landis Y. Lain, briefed, Susan Przekop Shaw, argued, Office of Atty. Gen., Correction Div., Lansing, MI, for defendants in No. 95–1837.

Susan L. Kay, argued, Vanderbilt Legal Clinic, Nashville, TN, for plaintiff in No. 95–6451.

Edward R. Corley, briefed, Nashville, TN, pro se.

Lisa T. Kirkham, Asst. Atty. Gen., Nashville, TN, for defendants in No. 95–6451.

Eugene F. Mooney, argued and briefed, Mooney, Mooney & Mooney, Lexington, KY, for plaintiff in No. 95–6366.

Tanaka Lee Birdo, briefed, West Liberty, KY, pro se.

John T. Damron, Office of Gen. Counsel, Dept. of Correction, Frankfort, KY, for defendant in No. 95–6366.

Benson A. Wolman, Moots, Cope & Stanton, Columbus, OH, J. Dean Carro, argued and briefed, C. Michael Walsh, briefed, University of Akron School of Law, Appellate Review Office, Akron, OH, for plaintiff in No. 95–4160.

John L. Wright, briefed, Chillicothe, OH, pro se.

Gary D. Andarka, briefed, Todd R. Marti, argued and briefed, Office of Atty. Gen., Corrections Lit. Section, Columbus, OH, for defendants Terry L. Morris, William B. Carmien, Susan Dunn, Roger T. Overberg, Nick J. Sanborn, Don Lubbering, Nancy Howard, Tracy Palmorous, Chris Garen, in No. 95–4160.

Jeffrey Paul Hopkins, briefed, Office of U.S. Atty., Columbus, OH, for defendants Director Bureau of Prisons, Federal Property Resources Service, Director Bureau of Land Management in No. 95–4160.

John H. Burtch, briefed, Karen E. Sheffer, Baker & Hostetler, Columbus, OH, for defendant Donald Roller in No. 95–4160.

John H. Burtch, Baker & Hostetler, Columbus, OH, for defendant Larry A. Pavey in No. 95–4160.

Before ENGEL, MERRITT, and MOORE, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which ENGEL, J., joined. MERRITT, J. (pp. 423–26), delivered a separate dissenting opinion.

MOORE, Circuit Judge.

These four consolidated cases present the question of whether the administrative exhaustion requirement of the Prison Litigation Reform Act of 1996,[1] Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321, applies to prisoner civil rights cases that were pending before this court when the Act took effect. For the reasons discussed below, we hold that the administrative exhaustion requirement does not apply to appeals already pending on the enactment date.

## I. FACTS AND PROCEDURAL HISTORY

■ We address the merits of plaintiffs' claims in separate opinions; it is therefore sufficient for the purposes of this opinion to

---

1. Although the Act states that it "may be cited as the 'Prison Litigation Reform Act of 1995,'" it was passed by Congress and signed by the Presi-dent in 1996. *See* Omnibus Consolidated Rescissions and Appropriations Act of 1996 § 801.

note that each of the four plaintiffs is an inmate in one of the four state prison systems in this circuit[2] who filed a pro se suit in the appropriate United States district court under 42 U.S.C. § 1983 challenging the conditions of his confinement. None of the inmates contends that he has exhausted all of the administrative remedies which were available at the time of the alleged violations.[3] The cases were filed between 1993 and 1995 and were dismissed by the district courts in 1995. The plaintiffs filed timely appeals.

While these appeals were pending in this court, Congress passed the Prison Litigation Reform Act of 1996 [hereinafter "PLRA" or "Act"], which requires inter alia that inmates exhaust "such administrative remedies as are available" before filing suit challenging prison conditions under § 1983. PLRA § 803(d) (amending 42 U.S.C. § 1997e(a)). The new law was signed by the President on April 26, 1996, and went into effect that same day. See Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1066 (6th Cir.1997) (statutes become effective when enacted absent indication to contrary). The clerk of this court chose one case from each state within this circuit and asked attorneys who were involved with prisoner civil rights litigation and attorneys for the four states to submit briefs on the issue of whether the new administrative exhaustion provision applies to these pending cases.[4]

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over these § 1983 cases under 28 U.S.C. §§ 1331, 1291. We examine de novo the purely legal question of whether a new statute applies to pending cases.[5] Lyons, 105 F.3d at 1065–66.

## III. DISCUSSION

Before this year, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not, as a rule, required to exhaust administrative remedies before filing suit. Although 42 U.S.C. § 1997e allowed district courts to "continue such case[s] for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available," exhaustion was only to be required "if the court believe[d] that such a requirement would be appropriate and in the interests of justice." 42 U.S.C. § 1997e(a)(1) (1995). See Patsy v. Board of Regents, 457 U.S. 496, 502–07, 102 S.Ct. 2557, 2560–63, 73 L.Ed.2d 172 (1982) (discussing § 1983); id. at 508–12, 102 S.Ct. at 2563–66 (discussing § 1997e). The PLRA, however, amended § 1997e to require that prisoners seeking to bring such claims first exhaust any available administrative remedies. 42 U.S.C. § 1997e(a). The question before us is whether this new requirement should be applied to cases which were filed, dismissed by the district courts, and appealed to this court before the PLRA was signed into law.

---

**2.** Plaintiff Wright is incarcerated in Ohio, Plaintiff Birdo in Kentucky, Plaintiff Corley in Tennessee, and Plaintiffs Bell and X in Michigan.

**3.** Plaintiff Corley filed an administrative complaint but did not appeal the denial of that complaint to the highest possible administrative level. He argues that, because the time for this final administrative appeal is long past, there is no longer any administrative process available to him and he has therefore met the exhaustion requirement. Appellant's Br. in No. 95–6451 at 13. In light of our holding in this case, we need not address this argument. It is clear, however, that in the usual case in the future, where the alleged violations occurred after the PLRA's enactment, and inmates have both notice that exhaustion is required and a reasonable opportunity to file complaints, it would be contrary to Congress's intent in enacting the PLRA to allow inmates to bypass the exhaustion requirement by

declining to file administrative complaints and then claiming that administrative remedies are time-barred and thus not then available.

**4.** The briefing letter stated the question as follows: "In the absence of an expressed effective date, does this legislation [the amendment to 42 U.S.C.1997e(a)] apply retroactively to litigation pending at the date of its enactment, April 26, 1996." The clerk also asked the attorneys to discuss whether the new law requires prisoners to appeal in state court a denial of administrative remedies. Because we hold that the exhaustion requirement does not apply to these cases we need not reach this second issue.

**5.** Because Congress did not enact the PLRA until after these cases were pending in this court, the district courts had no opportunity even to address the question.

■ The Supreme Court has determined that, in deciding whether a new statute should be applied to pending cases,

> the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, ... it does not govern absent clear congressional intent favoring such a result.

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). Accordingly, we "first look to the statute's text for an expression that the [Act] should, or should not, apply to pending cases." *Lyons*, 105 F.3d at 1065.

### A. Textual Analysis

■ The PLRA amended 42 U.S.C. § 1997e to read, "[n]o action *shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). We believe that Congress, by its use of the highlighted language, "has expressly prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505. The statute expressly governs the bringing of new actions, not the disposition of pending cases. Actions brought before the statute was enacted are not affected by the new administrative exhaustion requirement.

The Seventh Circuit has used similar reasoning to find that another provision of the PLRA does not apply to pending cases. In *Abdul–Wadood v. Nathan*, 91 F.3d 1023 (7th Cir.1996), that court had to decide whether a case filed before the PLRA's enactment could be dismissed under the new 28 U.S.C. § 1915(g), which states that "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if" he has brought three previous frivolous actions or appeals. 28 U.S.C. § 1915(g) (1996). Judge Easterbrook held for the court that the case should not be dismissed because "[s]ection 1915(g) governs bringing new actions or filing new appeals ... rather than the disposition of existing cases." 91 F.3d at 1025. Similarly, because § 1997e(a) governs only the bringing of actions, it does not affect pending cases.

Section 802 of the PLRA, which delineates the courts' authority to order prospective relief with respect to prison conditions, lends some additional support to this textual analysis. This section specifically states that the amendment in that section to 18 U.S.C. § 3626 "shall apply with respect to all prospective relief whether such relief was originally granted or approved before, on, or after the date of the enactment of this title." PLRA § 802(b)(1). Plaintiffs argue *expressio unius est exclusio alterius:* that because Congress specified that one part of the PLRA applies to pending actions, it must have intended that the rest of the Act does not. Such an argument would usually not be dispositive by itself. *See Landgraf*, 511 U.S. at 259, 114 S.Ct. at 1493–94; *Lyons*, 105 F.3d at 1067. Here, however, the text of the new requirement plainly states that "[n]o action shall be brought" without exhaustion of administrative remedies. Thus, it is likely that had Congress intended the new requirement to pertain to pending cases it would have employed the same language as it used in § 802(b)(1) to make that intent clear. This strengthens our conclusion that the text of the PLRA indicates that the new administrative exhaustion requirement applies only to cases filed after the Act's passage.

### B. Impermissible Retroactive Effect

■ Even if the language of the statute did not mandate that administrative exhaustion be required only in actions brought after the effective date of the Act, the Supreme Court's decision in *Landgraf* would do so. Footnote 29 of the Court's opinion is controlling:

A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, and the promulgation of a new rule of evidence would not require an appellate remand for a new trial.

*Landgraf,* 511 U.S. at 275 n. 29, 114 S.Ct. at 1502 n. 29. Although the states suggest that this language could refer only to changes to the technical requirements of filing a complaint, and that the footnote is thus distinguishable from the cases at bar, we will not give the opinion such a narrow reading. The new exhaustion requirement concerns the bringing of actions and, under *Landgraf,* does not affect cases brought before the Act's passage.[6]

▮ The states argue that because footnote 29 is dictum it is not binding on this court. *Cf. Covino v. Reopel,* 89 F.3d 105, 108 (2d Cir.1996) (dismissing footnote 29 as distinguishable dictum). We believe this footnote is instructive of the Supreme Court's views and cannot be dismissed out of hand. If anything, this particular "dictum," which eight Justices endorsed, carries more weight than much of the *Landgraf* analysis, which commanded a bare majority. *See Landgraf,* 511 U.S. at 290–92, 114 S.Ct. at 1524–25 (Scalia, J., concurring in judgment). Where there is no clear precedent to the contrary, we will not simply ignore the Court's dicta. *See Jordon v. Gilligan,* 500 F.2d 701, 707 (6th Cir.1974) ("Even the [Supreme] Court's dicta is of persuasive precedential value.").

▮ The states argue that there is, in fact, contrary Supreme Court precedent: *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), in which the plaintiff sought to enjoin a corporation from including partisan political literature with its dividend checks, and *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), which involved a challenge to Social Security eligibility requirements. Neither case is apposite. *Cort* involved two of the situations, inapplicable here, in which, under *Landgraf,* a court should "apply the law in effect at the time it renders its decision." *Landgraf,* 511 U.S. at 273, 114 S.Ct. at 1501 (quoting *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)). First, *Cort* differs from the cases at bar in that Ash was seeking to enjoin the defendants from future misconduct. *Cort,* 422 U.S. at 71, 74, 95 S.Ct. at 2084–85, 2086. "*In that circumstance,* a statute enacted after the decision of the Court of Appeals requires reversal of the holding of the Court of Appeals." *Id.* at 74, 95 S.Ct. at 2086. (citation omitted) (emphasis added). *See id.* at 77, 95 S.Ct. at 2087 ("[N]or is there any possible 'manifest injustice' in requiring respondent to pursue *with respect to alleged violations which have yet to occur* the statutory remedy for *injunctive relief* created by the [intervening] Amendments.") (emphasis added). Under *Landgraf,* applying a new statute to pending cases is proper where plaintiff seeks only future injunctive relief. *Landgraf,* 511 U.S. at 273–74, 114 S.Ct. at 1501–02.[7]

▮ Second, the intervening statute[8] in *Cort* "expressly vest[ed] the [Election]

---

**6.** There are other indications, too, in *Landgraf* that a procedural change enacted while a case is pending does not require that steps taken before the enactment be retaken. For example, although "[t]he jury trial right set out in § 102(c)(1) [of the 1991 Civil Rights Act] is plainly a procedural change of the sort that would ordinarily govern in trials conducted after its effective date," "the promulgation of a new jury trial rule would ordinarily not warrant retrial of cases that had previously been tried to a judge." *Landgraf,* 511 U.S. at 280, 281 n. 34, 114 S.Ct. at 1505, 1505 n. 34. *See* Norman J. Singer, 2 Sutherland Statutes and Statutory Construction § 41.04 at p. 351 (5th ed. 1992) ("It has been held that there is a presumption that procedural statutes apply retroactively. But steps already taken, including pleadings, and all things done under the

old law continue effective, unless an intent to the contrary is plainly manifested.") (footnote omitted).

**7.** The dissent's attempt to bring the cases at bar within the holding of *Cort* on the grounds that any relief granted will necessarily take place in the future is meaningless: because we cannot reverse time, of course any award of damages will occur in the future, just as it would have in *Landgraf.* Under the dissent's theory, a court could punish someone for conduct that was made criminal only after he had done it, because the punishment would take place in the future.

**8.** The new statute established the Federal Election Commission to "administer, seek to obtain compliance with, and formulate policy with re-

Commission with 'primary jurisdiction' over any claimed violation of [the relevant election law] within its purview." *Cort,* 422 U.S. at 75–76, 95 S.Ct. at 2086. Under *Landgraf,* "intervening statutes conferring or ousting jurisdiction" will regularly be applied to pending cases because "jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties,'" *Landgraf,* 511 U.S. at 274, 114 S.Ct. at 1502 (quoting *Republic Nat. Bank of Miami v. United States,* 506 U.S. 80, 100, 113 S.Ct. 554, 565–66, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)). *See Lyons,* 105 F.3d at 1075. The statute in *Cort* contained a specific grant of jurisdiction to the Commission which, the Court held, served at the same time to divest the federal courts of jurisdiction over such cases. *Cort,* 422 U.S. at 75–76 & n. 9, 95 S.Ct. at 2086–87 & n. 9. Section 1997e(a), in contrast, addresses a party's right to bring suit in court and does not speak in terms of jurisdiction or the power of the court: it is merely an exhaustion requirement. *See Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) ("Codified since 1948 in 28 U.S.C. § 2254,[9] the [habeas corpus] exhaustion rule, while *not a jurisdictional requirement,* creates a 'strong presumption in favor of requiring the prisoner to pursue his available state remedies.'") (citing 28 U.S.C. § 2254 and quoting *Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 1673–74, 95 L.Ed.2d 119 (1987)) (emphasis added); *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1085–86, 117 L.Ed.2d 291 (1992)

("The doctrine of exhaustion of administrative remedies is one among related doctrines—including abstention, finality, and ripeness—that govern the *timing* of federal court decisionmaking.") (emphasis added).[10]

*Cort,* then, does not suggest that the exhaustion requirement should apply to these pending cases. *Landgraf* specifically cites *Cort* as involving "application of [an] intervening statute transferring to [an] administrative agency *jurisdiction* over [a] *claim for injunctive relief.*" *Landgraf,* 511 U.S. at 279 n. 33, 114 S.Ct. at 1504 n. 33. In the cases before us, where plaintiffs seek monetary damages and the intervening statute does not purport to oust district court jurisdiction, *Cort* is inapposite.

The states next argue that the new administrative exhaustion requirement is jurisdictional under *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and should thus govern pending cases.[11] The essence of their argument is that *Salfi* held that a statute that involved agency exhaustion and contained seemingly prospective language was jurisdictional, and therefore that § 1997e(a) must also be jurisdictional. The *Salfi* opinion makes plain, however, the difference between the statute involved there and the one now before us. In *Salfi,* the Court held that it was clear that the relevant statute [12] was "more than a codified requirement of administrative exhaustion" on the grounds that the statute's "own language" was "sweeping and direct and [ ] state[d] that

---

spect to [the] Act and [related sections of the criminal code]. The Commission has primary jurisdiction with respect to the civil enforcement of such provisions." Federal Election Campaign Act Amendments of 1974, Pub.L. No. 93–443, 88 Stat. 1263, 1280–81 (codified at 2 U.S.C. § 437c(a)(1), (b) (1975)).

9. 28 U.S.C. § 2254(b) (1989) stated:
An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

10. We need not decide whether these statements in *Peoples* and *McCarthy* mean that district

courts can exercise jurisdiction over unexhausted prisoners' claims filed after the PLRA's enactment. We hold only that the new administrative exhaustion requirement of § 1997e does not oust preexisting jurisdiction.

11. *Salfi* did not involve any question of whether an interceding statute should apply to pending cases.

12. The Court quotes the statute, 42 *U.S.C.* § 405(h) (1974), in relevant part: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [§ 1331 *et seq.*] of Title 28 to recover on any claim arising under [Title II of the Social Security Act]." *Salfi,* 422 U.S. at 756, 95 S.Ct. at 2462 (alterations in original).

no action shall be brought under [28 U.S.C.] § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted." *Salfi,* 422 U.S. at 757, 95 S.Ct. at 2463. *See id.* at 756–57, 95 S.Ct. at 2462–63 ("On its face, this provision bars district court federal-question jurisdiction over suits, such as this one, which seek to recover Social Security benefits. Yet it was § 1331 jurisdiction which appellees successfully invoked in the District Court."). Section 1997e(a), in contrast, contains neither the sweeping and direct language of § 405(h) nor that statute's explicit bar to district court jurisdiction. It, rather, indicates "merely that only those actions shall be brought in which administrative remedies have been exhausted." *Salfi,* 422 U.S. at 757, 95 S.Ct. at 2463.

Because neither *Cort* nor *Salfi* requires a contrary result, we believe that even if the prospective statutory language were not dispositive in this case, footnote 29 of *Landgraf* would require that the new administrative exhaustion provision not apply to pending cases.[13]

### C.  Policy Considerations

The states and the plaintiffs argue at great length that applying, or refusing to apply, respectively, this new provision to pending cases would be good policy or would better serve the purposes of the new law. Such considerations do not figure in the *Landgraf* analysis. *See Landgraf,* 511 U.S. at 285–86, 114 S.Ct. at 1507–08 ("It will frequently be true ... that retroactive application of a new statute would vindicate its purpose more fully. That consideration, however, is not sufficient to rebut the presumption against retroactivity.... A legislator who supported a

prospective statute might reasonably oppose retroactive application of the same statute."). Moreover, it is not at all clear in this case which side has the better of the policy argument.

■■■ The Supreme Court has called "protecting administrative agency authority and promoting judicial efficiency" the "twin purposes" of exhaustion requirements. *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 1086–87, 117 L.Ed.2d 291 (1992). Sending these plaintiffs back to exhaust their administrative remedies would, of course, lighten this court's docket, at least temporarily.[14] *See id.* (judicial efficiency includes avoiding unnecessary judicial controversy and piecemeal appeals). However, "policy considerations alone cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent." *Patsy v. Board of Regents,* 457 U.S. 496, 513, 102 S.Ct. 2557, 2566, 73 L.Ed.2d 172 (1982). Because Congress did not intend that all prisoners who filed suit before the Act took effect be required to exhaust administrative remedies, we could not impose such a requirement even if we thought it wise policy.

In addition, although administrative exhaustion in the usual case "may produce a useful record for subsequent judicial consideration," *McCarthy,* 503 U.S. at 145, 112 S.Ct. at 1087, the facts in these cases are already stale. Administrative findings might still be useful to a reviewing court, but administrative fact finding in these old cases would not have the same promptness advantage over judicial fact finding that would exist where the administrative procedure occurred soon after the alleged violation.

Other policy considerations counsel against applying the new exhaustion requirement to

**13.** There is certainly nothing in the text of the PLRA to indicate "clear congressional intent" that the administrative exhaustion requirement should be given retroactive effect. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505.

The dissent's reliance on a short quote from Chief Justice Marshall's opinion in *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), therefore seems particularly strange. The new law at issue in that case (a treaty) explicitly applied to property that was not "definitively condemned" when the treaty was signed, *id.* 5 U.S. at 108; the holding rested on that

language, rather than on any broad principle of applying intervening laws. *See id.* at 110. *See also Landgraf,* 511 U.S. at 273, 114 S.Ct. at 1501 ("Our application of 'the law in effect' at the time of our decision in *Schooner Peggy* was simply a response to the language of the statute.").

**14.** We might, however, find some of these cases before this court again in another two years, after plaintiffs have exhausted their administrative remedies and then gone through district court for a second time.

pending cases. The sheer volume of prisoner civil rights cases makes it difficult for the federal courts to take the time that is often necessary to distinguish between the frivolous and the meritorious suits. That inmates are forced to file nearly all of these cases pro se, and can rarely conduct any sort of factual investigation, only compounds this problem. To the extent, then, that applying the new administrative exhaustion requirement to pending cases would allow the courts more time to examine the merits of each case, or would provide a way to separate the meritorious from the meritless cases, to do so would be good policy. Conversely, we would hesitate to do this if we thought it would aggravate these problems.

The majority of the prisoner's rights cases pending before this court were dismissed below; if past experience is any indication, to dismiss the cases and allow the prisoners to refile after they have exhausted their administrative remedies, or to retain jurisdiction over the cases while the inmates exhaust those remedies, will not reduce the district courts' dockets or workloads. To the contrary, the district courts would then have to reexamine these same cases, supplemented with new records from the administrative proceedings, sometime in the future. Although a district court that had erroneously previously dismissed a particular case might conceivably make a different determination based on the new administrative record, if an inmate had thought that going through the administrative process would help his case, he could have filed an administrative complaint in the first place under the old law. And if the district court had thought that administrative consideration would have been "appropriate and in the interests of justice," and that the available grievance procedure was "fair and effective," the district judge could have continued the case for up to 180 days and ordered administrative exhaustion in the first place. 42 U.S.C. § 1997e(a) (1995).[15] Furthermore, there is no indication that any plaintiffs with pending cases want to

be required, or even allowed, to go back and exhaust state administrative procedures. In this regard, then, we believe it is better policy to apply the old law to these pending cases and address them now, rather than recycling them through the system and perhaps perpetuating the problems that the old law engendered. We emphasize that we do not believe that it is our job to weigh policy—that is Congress's job. We address these policy arguments simply because the parties spent so much time doing so.

In the end, even if it were proper for us to use policy arguments to supersede congressional intent and apply the new law to these pending cases, it is unclear which outcome is the better policy.

■■ Sending these cases back for administrative exhaustion would also cause unnecessary jurisprudential questions in the future. The events giving rise to these cases occurred several years ago; in some, the statute of limitations has expired. Although all four of the states' representatives stated at oral argument that they would waive any applicable time limits on filing administrative claims, none of the assistant attorneys general present could assure us that they had the authority to extend the applicable statutes of limitations. Were we to apply the new law to these cases, it is not completely certain that we could toll the statutes of limitations. *Compare Board of Regents v. Tomanio,* 446 U.S. 478, 490–91, 100 S.Ct. 1790, 1798, 64 L.Ed.2d 440 (1980) ("Unless [a federal remedy] is structured to require previous resort to state proceedings, so that the claim may not even be maintained in federal court unless such resort be had, it cannot be assumed that Congress wishes to hold open the independent federal remedy during any period of time necessary to pursue alternative state-court remedies.") (citation omitted), *with Patsy,* 457 U.S. at 514 n. 17, 102 S.Ct. at 2566–67 n. 17 ("Unless the doctrine that statutes of limitations are not tolled pending exhaustion were overruled, *see* [*Tomanio* ], a

---

**15.** The pre-PLRA § 1997e(a) places no temporal restrictions on a district court's authority to order· this exhaustion. The dissent's suggestion that our decision today somehow denies district courts the benefits of an administrative record is therefore · somewhat mysterious: any district court that believes that such a record would be useful in a case governed by the old law may require administrative exhaustion.

judicially imposed exhaustion requirement might result in the effective repeal of § 1983."). Finally, the states have not pointed to anything to distinguish the cases before us, where the inmates lost at the district court level, from cases pending in this court in which the plaintiffs were victorious below. Requiring successful plaintiffs to relitigate their grievances would have impermissible retroactive effect under *Landgraf.* *See Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505 (statute will have retroactive effect if it "impose[s] new duties with respect to transactions already completed"). It may well be that the courts could develop doctrines and remedies to solve these potential problems. However, we should not invite unnecessary problems upon the courts and simply hope that we might be able to remedy them in the future.[16]

These considerations lend further support to our conclusion: where the language of the statute and *Landgraf* both require that we apply this new requirement only with respect to cases filed after the PLRA's passage, it would be improper to hold, on policy grounds, that the provision applies to the cases before us. *Cf. Patsy,* 457 U.S. at 514, 102 S.Ct. at 2567 ("These and similar questions might be answered swiftly and surely by legislation, but would create costly, remedy-delaying, and court-burdening litigation if answered incrementally by the judiciary in the context of diverse constitutional claims relating to thousands of different state agencies.").

## IV. CONCLUSION

Because the language of 42 U.S.C. § 1997e(a) is explicitly prospective and there is no reason to think that Congress intended a retroactive effect, we will not apply the new administrative exhaustion requirement to these cases where appeals were pending in this court on April 26, 1996, the day the PLRA was enacted. These four cases are properly before this court, and can be decided without undertaking administrative ex-

haustion. We address the merits of these four cases in separate opinions.

MERRITT, Circuit Judge, dissenting.

Does the new "prisoner civil rights" statute, the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e, apply to pending cases? That is the question before us. Passed in April 1996, the statute is jurisdictional in nature. It requires the exhaustion of all "available" state "administrative remedies" by the prisoner before a federal court may entertain and decide his civil rights action. Prior to the enactment of the new statute, no significant incentives existed to deter the filing of state prison petitions raising insubstantial issues, and so in federal courts each year prisoners file thousands of petitions and take thousands of appeals. More than 1,000 such appeals are filed in the Sixth Circuit Court of Appeals each year, and approximately 500 are now pending.

The opinion of the Court that the statute does not apply to pending cases fails even to mention the extensive benefits of the new statute or to acknowledge that those benefits apply just as much to pending cases as to new cases. This narrow interpretation of what could be an extremely useful law deprives prisoners, state corrections systems, state prosecutors and courts of an opportunity to overcome some of the problems with prisoner petitions now flooding the federal courts—almost all of which are denied without a hearing in the trial or appellate courts.

A system deferring federal court review until completion of the state process of administrative adjudication and judicial review of the administrative decision (if provided by state law) has long been needed. No persuasive reason has ever been given for requiring full exhaustion of state remedies in habeas corpus cases involving life or liberty but allowing direct access in prison rights cases under § 1983. The new statute is therefore a much needed reform with substantial benefits.

**16.** Congress passed the PLRA in large part to change the manner in which the federal courts handle prison civil rights actions. Had Congress intended that the Act have the drastic effect of throwing out of court litigants with pending ap-

peals, and of requiring that federal courts toll state statutes of limitations so that pending cases can be held in abeyance or refiled after administrative exhaustion, surely it would have given some indication of this intent.

The reasons for requiring exhaustion in such cases are similar to the reasons for requiring exhaustion of available remedies in state habeas corpus cases involving good-time credits and similar prison regulations, as explained by Justice Stewart in *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 498, 93 S.Ct. 1827, 1837–38, 1840–41, 36 L.Ed.2d 439 (1973). "It is difficult to imagine," he wrote, "an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons":

> The relationship of State prisoners and the State officers who supervise their confinement is far more intimate than that of a state and a private citizen.... Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems. Moreover, because most potential litigation involving state prisoners arises on a day to day basis, it is most efficiently and properly handled by the state administrative bodies and state courts, which are, for the most part, familiar with the grievances of state prisoners and in a better physical and practical position to deal with those grievances.
>
> ....
>
> [The exhaustion requirement] serves the important function of allowing the State to deal with these peculiarly local problems on its own while preserving for the state prisoner an expeditious federal forum for the vindication of his federally protected rights, if the State has denied redress.

Each of the four states in the Sixth Circuit, Tennessee, Kentucky, Ohio and Michigan, has recently established a prison grievance process for resolving disputes that is certified by the Department of Justice as meeting its criteria for a rational, fair and efficient system of conducting evidentiary hearings and deciding prison disputes. Such deliberative proceedings, based on evidence, a written record and concluding in a written decision subject to review, will give prison wardens, state correction officials, state executive, judicial and legislative leaders, and the public much needed information about the operation of the prison system. The prisoner will have an opportunity to complain, present evidence personally and have others testify before a neutral tribunal familiar with local prison conditions. Legitimate grievances can be worked out and adjusted at the local administrative and review level before coming to federal court, as currently takes place in criminal cases during the habeas corpus process.

This weeding-out process will tend to reduce the number of such cases that reach the federal courts, as in habeas cases, and improve the quality of the decision making process. The federal courts will have a written record. They will be able to determine whether a constitutional violation has occurred in a more reflective and reliable way without the present bureaucratic necessity of delegating the work in plenary fashion to pro se law clerks at the district court level and to staff attorneys at the appellate level.

In the *Thaddeus–X* case alone, Judge Moore's opinion on the merits of the summary judgment issue runs to 12,000 words and interprets nearly 100 different court opinions and orders a new trial in the court below that will require many days, perhaps weeks, of evidence from inmates and prison employees. *Thaddeus–X*, by itself, illustrates the reasons we should require administrative exhaustion and an administrative record before deciding the multiple, confusing, shotgun-type claims filed against the many state defendants in the case.

My colleagues' opinion avoids any serious consideration of beneficial purposes of the new statute or the policies underlying it. "We emphasize," Judge Moore says, "that we do not believe that it is our job to weigh policy—that is Congress's job." The opinion simply repeats several times in different ways the view that the pending cases will simply come back "before this court again in another two years, after plaintiffs have exhausted their administrative remedies and then gone through the district court for a second time." As a district judge I would prefer a few cases coming back with an

administrative record to the *Thaddeus–X* type result.

Ironically, this prediction that all of the cases will come back in two years is inconsistent with Judge Moore's stated view that the statute of limitations will probably have run when the cases come back to court. The purpose of the new statute is simply to defer a decision pending exhaustion of remedies, and the running of the statute of limitations would be tolled or suspended during the period of exhaustion, as is uniformly the case in all such administrative cases. This is not a valid argument against applying the new jurisdictional statute to pending cases.

Judge Moore's opinion on the issue of applying the statute to pending cases consists mainly of citing short excerpts from selected Supreme Court opinions to reach the chosen result—a familiar exercise in contemporary legal argumentation. The opinion ignores the broad purposes of the new statute and the fact that Congress, in employing the doctrine of exhaustion of remedies, has decided to use the habeas corpus model of exhaustion. Even if we use this limited rationale, however, a different conclusion is required. This rationale does not give the language of the new statute and the Supreme Court authorities their most plausible interpretation.

First, the statutory language, "no action shall be brought" until all available remedies are "exhausted," should be interpreted to mean what is obviously intended—that a federal court should not "decide" the merits of any such action prematurely. Contrary to the interpretation given by Judge Moore, it is obvious that Congress did not literally mean to bar a prisoner from "filing" a complaint in court. The only interpretation of the language that makes sense is that a federal court will not adjudicate the claim until after exhaustion. That is the purpose of the statute—non-adjudication of unexhausted claims—and it logically applies just as much to pending cases as to any other cases. The activity that the new statute contemplates should now occur—state adjudication of the claim—has not taken place in these cases, and the Court should not now adjudicate either a new or pending case without it.

Second, the language in *Landgraf v. USI Film*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that Judge Moore cites to reach the chosen result actually supports the opposite conclusion. In the *Court* case, Congress had recently enacted a new statute setting up the Federal Election Commission and creating for the first time a set of election law administrative remedies. In 1972, plaintiff had filed an action for damages and injunctive relief against Bethlehem Steel and its officials for making illegal corporate contributions to a presidential campaign, and the Court of Appeals had upheld the plaintiff's claim. The new exhaustion of remedies law was enacted after the Court of Appeals ruling. Justice Brennan, writing for a unanimous court, held that the exhaustion of remedies provision of the new statute must be applied to pending cases where the relief, if any, will take place in the future. In the cases now before us, as in *Court*, no relief has been granted and all relief, if any should be granted in either a judicial or prison administrative proceeding, must take place in the future. *Court* is specifically cited with approval in footnote 33 of *Landgraf v. USI Film*, and our Court should have followed its holding in the instant case.

Third, in quoting snippets of Supreme Court language, the lead opinion fails to recognize the significance of language from *Landgraf* relying on Chief Justice Marshall's opinion in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). For almost two centuries, the Supreme Court observes, "we have recognized that, in many situations, a court should 'apply the law in effect at the time it renders its decision ... even though the law was enacted after the events that gave rise to the suit.'" The Supreme Court then gives as examples of this doctrine a number of cases holding that intervening statutes modifying jurisdiction should be applied to pending cases because "application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear

the case'" (case citation omitted). In the instant case, our Court fails to recognize that the new statute now before us simply modifies our jurisdiction in § 1983 prisoner cases by requiring exhaustion of remedies. In *Landgraf*, the Supreme Court also says changes in procedural rules usually apply to pending cases "because rules of procedure regulate secondary rather than primary conduct." In the instant case the Court again fails to recognize that this new statute changes no "primary" or substantive right but only "secondary" rights governing the tribunal that will first conduct a hearing, make a record and resolve the dispute.

My conclusion is therefore that the purpose and policy underlying the new statute providing for exhaustion of state administrative remedies in prisoner 1983 cases leads to the application of the new statute to pending cases and that the case law since Chief Justice Marshall's time leads to the same conclusion. Applying the new statute to pending cases will not upset settled expectations or vested rights of any kind. All legitimate interests are served by such a rule—the prisoner with a valid grievance, the states which have created a fair process for adjudicating such claims and the federal courts which are now assigning such cases to pro se law clerks and staff attorneys because we are unable to cope with the volume of such cases or treat them in the same way that we treat regular federal question and diversity cases. The rule created by my colleagues declining to apply a current jurisdictional statute to pending cases is not sensible because it does not serve the interest of any party or the public and does not observe the longstanding values of federalism requiring a due respect for state institutional arrangements. And it certainly does not serve the cause of judicial economy. For these reasons, I do not believe we should exercise jurisdiction in these cases but should remand with instructions to dismiss without prejudice so that the parties can exhaust their administrative remedies under the Prison Litigation Reform Act of 1996.