Thomas C. **COOPER**, et al., Plaintiffs,

v.

**FAY SERVICING, LLC, Defendant.**

Case No. 1:15–cv–100

United States District Court,
S.D. Ohio, Western Division.

Filed July 17, 2015

Marc E. Dann, Dann, Doberdruk & Harshman LLC, Cleveland, OH, for Plaintiffs.

Richik Sarkar, McDonald Hopkins, Cleveland, OH, for Defendant.

## Order Granting in Part and Denying in Part Defendant's Motion to Dismiss

Susan J. Dlott, Chief Judge, United States District Court

This matter is before the Court on Defendant Fay Servicing, LLC's Motion to Dismiss the Plaintiffs' Amended Complaint (Doc. 7). Plaintiffs oppose the Motion. For the reasons that follow, Defendant's Motion will be granted in part and denied in part.

## I. BACKGROUND

### A. Facts[1]

The well-pleaded allegations of the Complaint are taken as true for purposes of the pending Motion to Dismiss. The current action stems from state foreclosure proceedings involving Plaintiffs' home, 7437 Chinook Drive, West Chester, Ohio 45069. Defendant Fay Servicing, LLC ("Defendant" or "Fay") is the current servicer of the note and a mortgage on the Plaintiffs' home.

On July 31, 2006, Plaintiff Thomas Cooper entered into a note with American Equity Mortgage, Inc. and Cooper and his wife, Co–Plaintiff, Elizabeth Cooper, secured the note by entering into a mortgage with American Equity Mortgage, Inc. (Note, Doc. 3–17 at PageID 310–319; Mortgage, Doc. 3–17 at PageID 320–40.) Fay began servicing the mortgage and note on or around August 2, 2013, when the servicing rights were transferred to Fay from CitiMortgage. Fay services the note and mortgage for non-party U.S. Bank National Association ("U.S.Bank"), as Trustee for PROF–2012–S1 Holding Trust I.

On January 6, 2014, U.S. Bank initiated foreclosure proceedings against Plaintiffs by filing a complaint in the Butler County, Ohio Court of Common Pleas.[2] Pursuant to agreements between U.S. Bank and Fay, Fay has the sole responsibility for directing the activities of foreclosure counsel, including the activities of counsel in the foreclosure action and subsequent appeal.[3]

On September 16, 2014, U.S. Bank, through counsel,[4] sent a blank loss mitigation application to counsel for the Coopers[5] in the underlying foreclosure action. Another copy was sent to the Coopers on September 24, 2014. According to the Coopers, they then began working with counsel to prepare and submit a completed loss mitigation application to Fay through counsel for U.S. Bank. However, on November 11, 2014, before the Coopers were able to submit a completed application, U.S. Bank filed a motion for summary judgment. On December 3, 2014, the Coopers responded in opposition. On December 4, 2014, the Coopers submitted a completed loss mitigation application to Fay through counsel.

Oral argument on the motion for summary judgment was held the next day, on December 5, 2014. U.S. Bank's counsel and a representative for Fay who attended the hearing confirmed receipt of the com-

---

1. The Court has drawn the background facts from Plaintiffs' Amended Complaint (Doc. 3) unless otherwise indicated.

2. The foreclosure case is captioned *U.S. Bank National Association, as Trustee for PROF–2012–S1 Holding Trust I v. Thomas C. Cooper, et al.*, case no. CV 2014 01 0037.

3. The foreclosure case is currently on appeal in the Court of Appeals of Ohio, Twelfth Appellate District, case no. CA 2015 01 0006.

4. U.S. Bank is represented by Laurito & Laurito, L.L.C. in the foreclosure action.

5. Plaintiffs are represented by the Dann Law Firm Co., L.P.A. in the foreclosure action, appeal and the current action.

pleted application for loss mitigation prior to commencement of the hearing. Counsel for the Coopers informed opposing counsel that they intended to enforce their rights pursuant to 12 C.F.R. § 1024.41 should Defendant fail to make an attempt to prevent the court from ruling on the motion for summary judgment until the complete loss mitigation application could be reviewed.

The Coopers assert neither counsel for U.S. Bank nor Fay's representative took action to avoid a ruling on the motion for summary judgment aside from making a settlement demand that they consent to a judgment and decree of foreclosure. The court suggested a temporary administrative dismissal should the parties not enter into a loan modification agreement or otherwise settle the foreclosure, but Fay and U.S. Bank did not agree to the administrative dismissal. Following the hearing, on December 9, 2014, counsel for U.S Bank forwarded a new proposed Judgment Entry Sustaining Plaintiffs' Motion for Summary Judgment and Decree for Foreclosure to the court.

On December 10, 2014, the Coopers, through counsel, sent a letter to Fay captioned "Notice of Errors under 12 C.F.R. § 1024.35(b)(1) for not seeking to avoid a ruling on a motion for summary judgment and taking actions in support of filing a motion for summary judgment while a loss mitigation application was pending in violation of 12 C.F.R. § 1024.41(g)." Fay sent a letter dated December 29, 2014 to the Coopers acknowledging receipt of the Notice, which was received by the Coopers on January 16, 2015. Fay then sent correspondence dated January 9, 2015 responding to Plaintiffs' first Notice of Errors. Plaintiffs received the correspondence on January 22, 2015.

On January 26, 2015, the Coopers sent a second Notice to Fay captioned, "Notice of Error under 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a Notice of Error and/or responding to a Notice of Error in a misleading manner in bad faith; reaffirmation of the Notice of Errors submitted on or about December 10, 2014 under 12 C.F.R. § 1024.35(b)(10) for not seeking to avoid a ruling on a motion for summary judgment and taking actions in support of filing a motion for summary judgment while a loss mitigation application was pending in violation of 12 C.F.R. § 1024.41(g)." Fay received the second Notice on January 30, 2015 but did not send a written acknowledgement of receipt of the second Notice. On February 25, 2015, an attorney for Fay sent an email responding to the second Notice via e-mail.

On February 17, 2015, Plaintiffs sent a third Notice of Errors captioned, "Notice of Error under 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.1(c)." Defendant sent an email acknowledging receipt of the Notice on February 23, 2015.

**B. Procedural History**

Plaintiffs initiated this lawsuit on February 9, 2015. In their Amended Complaint, Plaintiffs assert sixteen claims against the Defendant. In fifteen of those claims, Plaintiffs allege Defendant violated 12 C.F.R. § 1024.35 and/or § 1024.41 of Regulation X[6] in failing to properly respond to and evaluate their loss mitigation applica-

---

**6.** The Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X) is a Consumer Financial Protection Bureau regulation promulgated pursuant to section 1022(b) of the Dodd–Frank Act, 12 U.S.C. § 5512(b), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

§ 2601 *et seq.* Regulation X became effective on January 10, 2014. 78 FR 10696–01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024). A borrower may enforce the provisions of 12 C.F.R. § 1024.41 pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)). 12 C.F.R. § 1024.41(a).

tion and Notices of Errors regarding the same. Plaintiffs also allege Defendant violated 15 U.S.C. § 1692e for use of false, deceptive, or misleading representations or means in connection with the collection of a debt.

On May 8, 2015, Defendant filed the Motion to Dismiss currently pending before the Court. (Doc. 7.) Defendant alleges that Plaintiffs' Regulation X claims are barred because the regulation did not become effective until six days after the foreclosure action was initiated in state court. Alternatively, Defendant argues a waiver provision renders Plaintiffs unable to state a claim. Plaintiffs oppose Defendant's Motion.[7]

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir.2008). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir.2012).

In ruling on a motion to dismiss, the court may consider written instruments that are exhibits to a pleading, as those are considered part of the pleading for all purposes. *Campbell v. Nationstar Mortg.*, No. 14–1751, 611 Fed.Appx. 288, 291–92, 2015 WL 2084023, at *3 (6th Cir. May 6, 2015) (citing Fed.R.Civ.P. 10(c)). A court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)). "Moreover, a defendant may, in certain circumstances, introduce into the pleadings documents that the plaintiff does not." *Id.* "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997)). Thus, in this case, the Court may consider "documents relating [to] the note, mortgage, assignment, loan modification process, and foreclosure that are referenced in the [amended] complaint and integral to [the Coopers'] claims." *Id.* (citing *Gardner v. Quicken Loans, Inc.*, 567 Fed.Appx. 362, 365 (6th Cir.2014)).

## II. ANALYSIS

### A. Retroactive Application of Regulation X

Regulation X became effective on January 10, 2014.[8] Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696–01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024). Plaintiffs allege Defendant violated 12 C.F.R. §§ 1024.41 and 1024.35 of

---

**7.** In its Reply brief, Defendant requested oral argument on its Motion to Dismiss. Because oral argument would not assist the resolution of the Defendant's Motion, Defendant's request is denied.

**8.** However, the final rule amending Regulation X was promulgated by the Consumer Financial Protection Bureau nearly a year prior, on February 14, 2013. *Id.*

Regulation X. 12 C.F.R. § 1024.41 prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a complete loan modification, or loss mitigation, application. 12 C.F.R. § 1024.41(g). 12 C.F.R. § 1024.35 sets forth error resolution procedures to be used by the loan servicer and lender to address certain issues, including errors in moving for foreclosure judgment. 12 C.F.R. § 1024.35(b)–(e). 12 C.F.R. § 1024.35 triggers an obligation by the servicer to acknowledge and respond to certain notices of errors submitted to the servicer by the borrower within established time periods. 12 C.F.R. § 1024.35(c)–(e). In this case, Plaintiffs allege that Defendant did not properly respond to or acknowledge the loss mitigation application submitted on December 4, 2014 and that Defendant went forward with pursuing foreclosure in arguing for summary judgment in state court. This alleged violation triggered subsequent violations, including failure to properly respond to notices of errors submitted by Plaintiffs to Defendant.

Defendant argues that Plaintiffs are precluded from enforcing their Regulation X rights because the complaint initiating the state court foreclosure action was filed on January 4, 2014, six days before Regulation X's January 10, 2014 effective date. According to the Defendant, apply-

ing Regulation X here would be impermissibly retroactive under *Campbell v. Nationstar Mortg.* No. 14–1751, 611 Fed. Appx. 288, 296–98, 2015 WL 2084023, at *7 (6th Cir. May 6, 2015). In *Campbell*, the Sixth Circuit held that 12 C.F.R § 1024.41 could not be retroactively applied to a foreclosure sale that occurred several months prior to the effective date of the regulation. *Id.* at 298, 2015 WL 2084023 at *8. Campbell applied for loan modification in January 2013, and her loan servicer, Nationstar, proceeded with foreclosure by sheriff's sale on July 11, 2013, events which both occurred prior to Regulation X's January 10, 2014 effective date. *Id.* at 290–91, 2015 WL 2084023 at *2. Campbell argued that Nationstar violated RESPA by referring her loan to foreclosure after loss mitigation had begun, beginning the foreclosure process after stating foreclosure would not begin during loss mitigation, and referring her mortgage loan to foreclosure after requesting supplemental documents from her and setting a due date for them after the sheriff's sale. *Campbell v. Nationstar Mortg.*, No. 14–cv–10645, 2014 WL 3808934, at *5 (E.D.Mich. May 19, 2014), *aff'd*, No. 14–1751, 611 Fed. Appx. 288, 2015 WL 2084023 (6th Cir. May 6, 2015). The Court concluded that Campbell did not adequately plead a claim under 12 C.F.R. § 1024.41, because Regulation X was not in effect at the time of the foreclosure at issue and did not retroactively apply.[9] *Id.* at *7.

9. In so concluding, the Court applied the applicable two-part test for determining whether a statute or regulation should apply retroactively to conduct that preceded the law's enactment set forth by the Supreme Court in *Fernandez–Vargas v. Gonzales*, 548 U.S. 30, 37–38, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006):

We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach

specifically intended by applying our normal rules of construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absen[ce of] a clear indication from Congress that it intended such a result.

*Campbell* has limited application here. Critically, Plaintiffs acknowledge that Regulation X cannot be applied retroactively. The timeline of events in this case is distinguishable and demonstrates that Plaintiffs are not seeking retroactive application of Regulation X. Unlike in *Campbell*, where both the loss mitigation process and foreclosure sale occurred well before the January 10, 2014 effective date, in this case the loss mitigation process occurred after Regulation X's January 10, 2014 effective date. The foreclosure sale has yet to occur. Thus, for these reasons, *Campbell* is not controlling.[10]

Rather, as Plaintiffs argue, the facts of this case are most analogous to *White v. Wells Fargo Bank,* No. 2:14–cv–12506, 2015 WL 1842811, at *3 (E.D.Mich. April 22, 2015) and *Lage v. Ocwen Loan Servicing LLC,* No. 14–CIV–81522, 2015 WL 631014, at *3 (S.D.Fla. Feb. 12, 2015), where the courts denied motions to dismiss RESPA claims alleging violations of Regulation X. In *White,* the plaintiff borrowers alleged the defendant violated RESPA by commencing foreclosure proceedings on their home while still reviewing an application for a loan modification review and without making a decision on the initial application in violation of Regulation X. *Id.* The court "decline[d] to find that RESPA is inapplicable in a case where the loan modification request was made prior to the effective date and the foreclosure took place after the effective date" and on that basis, found dismissal to be inappropriate. *Id.* In reaching its conclusion, the court was persuaded by the non-binding consumer guide published by the Consumer Financial Protection Bureau, which states:

> These new rules [Regulation X] became effective on January 10, 2014. Any borrower who files a complete loss mitigation application on or after January 10, 2014 and more than 37 days before a foreclosure sale is entitled to an evaluation of the complete loss mitigation application for all available loss mitigation options (so long as the conditions of 12 C.F.R. 1024.41 are met). *The servicer must conduct this evaluation even if the borrower previously filed for, was granted, or was denied a loss mitigation plan before January 10, 2014.*

*Id.* (citing CFPB, Help for Struggling Borrowers: A guide to the mortgage servicing rules effective on January 10, 2014, at 8 (January 28, 2014) (emphasis added)).

In *Lage,* the court declined dismissing the plaintiffs' RESPA claim asserting violations of Regulation X where plaintiffs submitted a loss mitigation application "[s]ometime prior to January 28th, 2014" and where a foreclosure sale had yet to occur. *Lage v. Ocwen Loan Servicing LLC,* 2015 WL 631014, at *1, 3. The court rejected the argument that plaintiffs' lack of specificity as to which date their complete loss mitigation application was submitted necessarily rendered it submitted prior to the effective date of Regulation X. *Id.* at *4. The court also noted that even if that had been the case, it was "not persuaded that [the defendant] was free to utterly neglect Plaintiffs' application had it been filed a mere one minute, or even a

---

*Campbell,* 611 Fed.Appx. at 296–98, 2015 WL 2084023, at *7 (citing *Fernandez–Vargas v. Gonzales,* 548 U.S. 30, 37–38, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006) (citations and quotation marks omitted)).

10. Defendant also argues *Ray v. U.S. Bank Nat. Ass'n,* No. 14–cv–11831, 2015 WL 400918, at *4 (E.D.Mich. Jan. 28, 2015) is

analogous. However, like *Campbell,* this case is factually distinguishable. In *Ray,* the court rejected the argument that RESPA could be applied retroactively and held that the plaintiff borrowers were not entitled to relief under 12 C.F.R. § 1024.41, because the regulation did not become effective until more than six months after the property at issue was sold at foreclosure sale. *Id.*

single day, prior to the effective date of Regulation X." *Id.* at *3. By contrast, here, there is no question Plaintiffs' loss mitigation application was submitted after Regulation X's effective date. Consistent with *White* and *Lage*, the Court will not dismiss Plaintiffs' Regulation X claims under RESPA.

Defendant also argues application of Regulation X would alter the procedural rules in place at the time the foreclosure complaint was filed, because 12 C.F.R. § 1024.41 modifies if and when it may seek summary judgment. Defendant relies upon *Wright v. Morris*, 111 F.3d 414, 418–22 (6th Cir.1997) for the proposition that once a judicial proceeding begins, the procedural rules in place at the commencement of the suit exclusively apply throughout. In *Wright*, during the pendency of four prisoner civil rights cases, the Prison Litigation Reform Act ("PLRA") took effect, and 42 U.S.C. § 1997e(a) was amended to read that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* at 418 (citing 42 U.S.C. § 1997e(a)). The Court held that the statute expressly governed bringing new actions, and actions brought prior to the statute's enactment were not affected by an administrative exhaustion remedy. *Id.* The Court further held that even if the statute did not expressly man-

date exhaustion be required only in actions brought after the effective date, the new administrative exhaustion provision would not apply to pending cases. *Id.* at 419–20.

■ Unlike the language of the PLRA at issue in *Wright,* in this case, the language of 12 C.F.R. § 1024.41 contemplates that a party may seek to enforce his or her rights after a foreclosure complaint is filed. 12 C.F.R. § 1024.41(g) states that "if a borrower submits a complete loss mitigation application *after* a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale," as in this case, "a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale" unless certain criteria are met. 12 C.F.R. § 1024.41(g) (emphasis added). Thus, while it would constitute retroactive application to apply 12 C.F.R. § 1024.41 to a case where the date of enactment trailed the foreclosure sale, the regulation contemplates application after a foreclosure action has been brought. On this basis, *Wright* has limited application here.[11]

For these reasons, Plaintiffs' RESPA claims do not constitute impermissible retroactive application of Regulation X.[12]

## B. Waiver Provision in Forbearance Agreement

■ Defendant alternatively argues that Plaintiffs waived the claims asserted in the

---

11. For the same reason, Defendant's argument that applying the regulation in this context would violate due process is unpersuasive.

12. Defendant also argues that 12 C.F.R. § 1024.41(g) constitutes a "unilateral modification of state judicial foreclosure procedures" and is "impermissible and invalid federal overreach," an argument the Court finds unavailing. (Doc. 12 at PageID 500.) Specif-

ically, Defendant contends the new requirements implemented by Regulation X impermissibly interfere with "Ohio's strict 1 year foreclosure timeline." (*Id.*) Yet, Defendant's support for its position appears to be a statistical reporting guideline for state court judges. Accordingly, the Court is not persuaded that 12 C.F.R. § 1024.41(g) constitutes modification of state judicial procedures and would impinge upon principles of federalism.

Complaint in a Forbearance Agreement executed on January 31, 2014. On that date, Plaintiff Thomas Cooper entered into a Forbearance Agreement with Lender U.S. Bank National Association, as Trustee for PROF–2012–S1 Holding Trust I. (Doc. 7–2 at PageID 364–68.) Paragraph 9 of the Forbearance Agreement states:

> 9. *Release.* In consideration of Lender's forbearance, Borrower expressly waives any defenses, offsets, or counterclaims of any nature whatsoever which Borrower may have or may otherwise claim or assert against Lender or the Holder/Owner of the loan. Borrower expressly waives the right to challenge or contest the acceleration of the loan or the foreclosure process (if any) already initiated by Lender, Lender's attorney, or the foreclosure trustee, including all acts or omissions prior to the execution of this Forbearance Agreement, whether such acts or omissions were performed by Lender, Lender's attorney, or the foreclosure trustee (if any), or any party acting on behalf of Lender, Lender's attorney, or the foreclosure trustee (if any).

(*Id.* at PageID 367.) Plaintiffs argue that the terms of the release do not apply to their pending claims.[13]

The Court agrees that the waiver is inapplicable here. Initially, the future-oriented language of the first sentence of § 9 of the Forbearance Agreement applies to "defenses, offsets, or counterclaims of any nature whatsoever." Although the provision is broadly worded, Plaintiffs' claims here are not defenses, offsets, or counterclaims, and as such, the language does not bar them. The second sentence of § 9 states that the borrower waives the right

to "challenge or contest the acceleration of the loan or the foreclosure process (if any) already initiated by the Lender, Lender's attorney, or the foreclosure's trustee, including all acts or omissions prior to the execution of this Forbearance Agreement." Yet Plaintiffs do not challenge the foreclosure process "already initiated" or "acts or omissions prior to the execution of the Forbearance Agreement." Rather, the alleged violations occurred well after the Forbearance Agreement was executed, as Plaintiffs allege that by moving forward with the foreclosure process in December 2014, the Defendant acted in violation of Regulation X. The Court simply does not read the waiver to encompass all future claims Plaintiffs could ever have against the Defendant relating to the foreclosure. Thus, as Plaintiffs' claims here hinge upon alleged violations that occurred after the Forbearance Agreement was executed, the Court finds the language of the waiver is inapplicable and does not bar Plaintiffs' claims.

### C. Standing

█ In its Reply in Support of its Motion to Dismiss Plaintiffs' Amended Complaint, Defendant argues that Plaintiff Elizabeth Cooper lacks standing to bring her claims.[14] Defendant asserts that it recently discovered that Plaintiff Elizabeth Cooper is a nonsignatory not only to the Forbearance Agreement, but also to the loan modification application and note. (Forbearance Agreement, Doc. 7–2 at PageID 364–69; Hardship Assistance Package, Doc. 11–2 at PageID 481–85; Note, Doc. 3–17 at PageID 310–19.) Pursuant to 12 C.F.R. § 1024.41(a), violations of 12 C.F.R. 1024.41 are enforced under section

---

13. The parties also argue over who is a proper party to the Forbearance Agreement. The Court need not address this argument as the language of the waiver is dispositive. Further, whether Ms. Cooper has standing to bring suit is addressed *infra* § III(C).

14. Plaintiffs have not responded to this argument.

6(f) of RESPA (12 U.S.C. 2605(f)). 12 U.S.C. § 2605 specifies that civil liability under RESPA is limited to borrowers. *See Leblow v. BAC Home Loans Servicing, LP*, No. 1:12–cv–00246–MR–DLH, 2013 WL 2317726, at *7 (W.D.N.C. May 28, 2013) (finding nonsignatory spouse to note lacked standing to assert a RESPA claim because she was not a "borrower.") In this case, Plaintiff Elizabeth Cooper did not sign the note or loan application modification, whereas her husband, Plaintiff Thomas Cooper, did. As such, the Regulation X claims brought pursuant to RESPA must be asserted by Plaintiff Thomas Cooper as the sole borrower. Accordingly, Plaintiff Elizabeth Cooper lacks standing under RESPA to bring her Regulation X claims.[15] *See id.* at *7.

## I. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss (Doc. 7) is granted in part and denied in part. Because the Court finds Plaintiff Elizabeth Cooper lacks standing to bring her Regulation X claims, the court grants Defendant's Motion to Dismiss the Regulation X claims asserted by Plaintiff Elizabeth Cooper. However, the Court denies the Motion to Dismiss Plaintiff Thomas Cooper's claims and the parties' 15 U.S.C. § 1692e claim.

IT IS SO ORDERED.

---

**15.** Although Defendant broadly argues that Plaintiff Elizabeth Cooper lacks standing to pursue any of her claims, Defendant fails to brief the issue of why Plaintiff lacks standing to bring her 15 U.S.C. § 1692e claim. Accordingly, the Court rules only that Plaintiff Elizabeth Cooper lacks standing to bring her RESPA claim under the authority relied upon by Defendant.