NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0330n.06

No. 14-1751

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 06, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BARBARA CAMPBELL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| NATIONSTAR MORTGAGE and FEDERAL | ) | EASTERN DISTRICT OF MICHIGAN |
| NATIONAL MORTGAGE ASSOCIATION, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: BOGGS and McKEAGUE, Circuit Judges; PEARSON, District Judge.[*]

BENITA Y. PEARSON, District Judge. Plaintiff-Appellant Barbara Campbell sought to have the foreclosure sale of her house in Detroit, Michigan set aside due to alleged defects in the loan modification and foreclosure proceedings initiated by Defendants-Appellees Nationstar Mortgage, LLC ("Nationstar") and Federal National Mortgage Association ("Fannie Mae"). For the reasons that follow, we affirm the district court's dismissal of Campbell's case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Campbell obtained a $165,000 loan from Flagstar Bank on July 25, 2006. As security for the loan, Campbell granted Mortgage Electronic Registration Systems, Inc. ("MERS"), acting

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

solely as nominee for the lender and the lender's successors and assigns, a mortgage against her house. MERS assigned Campbell's mortgage to Nationstar on April 23, 2010.

Campbell defaulted on her mortgage. She alleges that financial hardship resulting from extensive medical treatment for both herself and close family members caused the default. Seeking relief, Campbell applied for a loan modification from Nationstar in January 2013. Nationstar assigned a Single Point of Contact ("SPOC") to assist Campbell with the process. Campbell also applied for assistance with the Detroit Non-Profit Housing Corporation, which prepared and submitted a loan modification application on her behalf.

Nationstar mailed a letter to Campbell on March 6, 2013, informing her that Nationstar had received her application for the "FNMA Apollo Trial Period" (Fannie Mae's loan modification program) and that it was under review. The letter states, in pertinent part: "Please note that during this evaluation period your home will not be referred to foreclosure or be sold at a foreclosure sale if the foreclosure period has already been initiated." R. 1-2 at Page ID #54. It is undisputed that Campbell's house had not yet been referred to foreclosure at the time Nationstar sent this letter. The record is ambiguous, however, on whether the FNMA Apollo Trial Period is an independent loss mitigation program separate and apart from the obligations of Nationstar and Fannie Mae under Mich. Comp. Laws § 600.3205a, or whether Nationstar's review of Campbell's FNMA Apollo Trial Period application is part of the notice requirements set forth in § 600.3205a that foreclosing parties must follow before commencing a foreclosure proceeding.

Campbell received a letter on March 14, 2013 from Trott & Trott, P.C., Nationstar's designee. The letter informed Campbell of her right, pursuant to Mich. Comp. Laws § 600.3205a, to request a meeting to discuss modification of her mortgage loan. Campbell alleges that she promptly replied and requested a loan modification meeting. Notwithstanding her alleged response to Trott & Trott, P.C.'s letter, Campbell states that she "was never given a meeting despite calls to find out why." Campbell also contends that she promptly replied to each Nationstar letter requesting additional documents to support her loan modification application, but that Nationstar employees gave her conflicting answers about whether Nationstar had received the documentation. One employee allegedly informed Campbell that "she should continue to provide documentation to [Nationstar] as requested and if a foreclosure occurred, it would be reversed."

Meanwhile, Nationstar proceeded with foreclosure by advertisement. Starting on May 27, 2013, Nationstar published notice in the Detroit Legal News. The following day, Nationstar posted a copy of the foreclosure notice on Campbell's property. Nationstar purchased Campbell's house at a Sheriff's Sale on July 11, 2013. Pursuant to Mich. Comp. Laws § 600.3240(8), Campbell had six months after the foreclosure sale to exercise her statutory right of redemption. Campbell, however, took no action to redeem her property. Campbell alleges that, while proceeding with the foreclosure, Nationstar continued to request documentation for her "FNMA Apollo Trial Period" application. Specifically, Campbell presents a letter that she received from Nationstar on June 19, 2013, in which Nationstar requested that Campbell send a

signed copy of her most recent tax returns to Nationstar by July 20, 2013—nine days after the Sheriff's Sale.

Campbell filed her complaint in Wayne County Circuit Court on January 13, 2014, alleging four causes of action: (1) Violation of Mich. Comp. Laws § 600.3205 *et seq.* as to Nationstar, (2) Violation of the Real Estate Settlement Procedures Act ("RESPA"), Regulation X, and 12 C.F.R. § 1024.41 as to Nationstar, (3) Negligence of Duty under the Home Affordable Modification Program ("HAMP") as to Fannie Mae, and (4) Illegal Foreclosure as to both Nationstar and Fannie Mae. Nationstar and Fannie Mae timely removed the case to the United States District Court for the Eastern District of Michigan and moved to dismiss Campbell's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted Nationstar and Fannie Mae's motion as to each of Campbell's claims. Campbell's timely appeal followed.

## II. STANDARD OF REVIEW

We review *de novo* a district court's decision to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The purpose of a Rule 12(b)(6) motion is "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson Cnty.*, 814 F.2d 277, 279 (6th Cir. 1987) (en banc)). "Following *Twombly* and *Iqbal*, it is well settled that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ctr. for Bio–Ethical Reform v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)) (internal quotation marks omitted). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369 (quoting *Iqbal*, 556 U.S. at 678).

When considering a motion to dismiss, we must "'accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007)). We do not, however, need to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In addition to the allegations in the complaint, [we] may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011).

## III. ANALYSIS

### A. Nationstar and Fannie Mae's Motion to Dismiss

Campbell argues that the district court improperly considered a motion for summary judgment that Nationstar and Fannie Mae disguised as a motion to dismiss for failure to state a claim.[1] Campbell contends that a number of documents relied on by Nationstar and Fannie Mae are outside the pleadings and raise factual assertions that, according to Campbell, she was unable

---

[1] Campbell raised this argument in her statement of the case and not in the argument section of her brief.

to respond to without the benefit of discovery. Because the documents were beyond the scope of a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the argument goes, the district court erred in granting the motion to dismiss.

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). A court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Moreover, a defendant may, in certain circumstances, introduce into the pleadings documents that the plaintiff does not. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993), *overruled on other grounds, Swierkiwica v. Sorema, N.A.*, 534 U.S. 506 (2002). "Hence, in this case, the panel may consider documents relating [to] the note, mortgage, assignment, loan modification process, and foreclosure that are referenced in the complaint and integral to [Campbell's] claims." *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 365 (6th Cir. 2014).

Campbell attached a letter from Nationstar's designee, Trott & Trott, P.C. (R. 1-2 at Page ID #55–57), the letter confirming receipt of Campbell's request for a loan modification (*id.* at #58–59), and the affidavit of notice pursuant to Mich. Comp. Laws § 600.3205 (*id.* at #64) as exhibits to her complaint. Similarly, Campbell attached as exhibits to her complaint: her mortgage (*id.* at #26–37), the MERS Inc. servicers identification (*id.* at #31), her Detroit Non-

Profit Housing Corporation Application (*id.* at #43–48), her HAMP application (*id.* at #50–52), the Sheriff's deed on mortgage sale (*id.* at #67–79), and various letters of correspondence between Campbell, Trott & Trott, P.C., and Nationstar. The federal rules treat these attached exhibits as part of the pleadings. The district court could, therefore, consider these exhibits in ruling on Nationstar and Fannie Mae's motion to dismiss. *See* Fed. R. Civ. P. 10(c). And, to the extent the district court considered any of these documents in ruling on the motion to dismiss, it was proper to do so, under Federal Rule of Civil Procedure 10(c).

Campbell contends that Nationstar and Fannie Mae improperly relied on documents that are outside the pleadings in their motion to dismiss: (1) income documentation supporting Campbell's loan modification application and (2) a letter sent by Nationstar that informed Campbell that she had failed to provide financial documents necessary to conduct a loan modification meeting. Neither argument is availing. "[W]e can affirm on any basis supported by the record." *EA Mgmt. v. JP Morgan Chase Bank, N.A.*, 655 F.3d 573, 575 (6th Cir. 2011). Because the record reflects that the case was dismissed for reasons unconnected to Nationstar and Fannie Mae's arguments that relied on the income documentation and the letter sent by Nationstar, it is not necessary to decide whether the district court improperly considered these documents.[2]

---

[2] In their motion to dismiss, Nationstar and Fannie Mae relied on Campbell's income documentation to support their argument that Campbell was not qualified for a loan modification. The district court did not evaluate whether Campbell qualified for a loan. Instead, it merely observed that Campbell failed to plead any facts that support such a conclusion. The district court further held that, "[e]ven if Campbell did qualify, 'there is nothing in [Mich. Comp. Laws § 600.3205] itself that *requires* a lender to grant a borrower a modification, even if the borrower is eligible for modification.'" R. 8 at Page ID #367 (quoting *Brown v. Wachovia Mortg., N.A.*, No. 307344, 2013 WL 6083906, at *5 (Mich. Ct. App. Nov. 19, 2013)); *see also*

The district court's holdings relied on documents that Federal Rule of Civil Procedure 10(c) treats as part of the pleadings. Therefore, the district court properly considered Nationstar and Fannie Mae's motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## B. Campbell's Foreclosure Claims

Campbell challenges the district court's dismissal of her two mortgage-foreclosure claims. Count I of her complaint alleges that Nationstar violated Mich. Comp. Laws § 600.3205 by failing to meet with Campbell in order to determine whether she qualified for a loan modification. Count IV is predicated on Count I. Campbell alleges that, because Nationstar and Fannie Mae failed to meet with Campbell about loan modification, they lacked the legal authority to foreclose on her property.

Michigan law vests the purchaser of the deed at a foreclosure sale with "all the right, title, and interest that the mortgagor had" in the property unless the mortgagor redeems the property within the sixth-month statutory period for redemption. Mich. Comp. Laws § 600.3236. The

---

*Olson v. Merrill Lynch Credit Corp.*, 576 F. App'x 506, 510 (6th Cir. 2014) ("The statute did not require the lender to actually modify the loan."). Therefore, even if the district court had considered the income documentation that Campbell argues it should not have, the district court found Campbell's claim for a violation of Mich. Comp. Laws § 600.3205 failed for reasons unrelated to the documentation.

Nationstar and Fannie Mae argued that Nationstar's letter proves that Campbell failed to provide documentation requested by Nationstar, a precondition to obtaining a loan modification meeting under Mich. Comp. Laws § 600.3205. The district court expressly rejected this argument. In a footnote, the district court stated that it accepted as true that Campbell appropriately responded to all requests for documentation. Although the district court accepted that Campbell provided the requested documentation during the loan modification process, it nonetheless concluded that Campbell had failed to adequately plead that she was prejudiced by an irregularity in the foreclosure process. The district court's opinion on this point, as with the court's income-documentation opinion, rests on grounds for dismissal separate and apart from whether Campbell had submitted the requisite documentation entitling her to a loan modification meeting.

mortgagor loses her legal interests in the property after the redemption period expires. *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 428 (6th Cir. 2013) ("A strict reading of the statute suggests that once the redemption period expires, the homeowner has no legal interest in the property that litigation might vindicate."); *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 641–42 (Mich. 1993) (observing that a strict construction of Michigan's redemption statute "preclud[ed] deviation from its terms despite equitable considerations"). It is undisputed that Campbell commenced this present lawsuit after the expiration of the six-month redemption period without having taken any steps to redeem her property. Therefore, Nationstar, as purchaser of Campbell's property at the July 11, 2013 Sheriff's Sale, enjoys all the rights that Campbell had in her property unless Campbell can demonstrate a basis for setting aside the sale.

In order to successfully set aside a foreclosure sale after the expiration of the redemption period, the mortgagor must first make "a clear showing of fraud, or irregularity." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 361 (6th Cir. 2013) (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). The indicated irregularity, however, must have occurred in the foreclosure process itself. *Williams v. Pledged Property II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012) (citing *Heimerdinger v. Heimerdinger*, 299 N.W. 844, 846 (Mich. 1941)). "[D]efects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*." *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012). In order to have the foreclosure sale set aside, the mortgagor must also demonstrate that she was prejudiced by the irregularity. *Conlin*, 714 F.3d at 361 (quoting *Kim*, 825 N.W. at 337). A mortgagor demonstrates prejudice by showing that she would have been in

a better position to preserve her interest in the property absent the defendant's noncompliance with Michigan's foreclosure laws. *Conlin*, 714 F.3d at 361 (quoting *Kim*, 825 N.W. at 337).

Campbell has failed to plead an irregularity in the foreclosure process. In her complaint, Campbell alleges that Nationstar failed to have a meeting with her before commencing foreclosure, and that Nationstar proceeded with foreclosure without determining whether Campbell qualified for a loan modification after Nationstar had sent a letter that stated Campbell's home would not be referred to foreclosure during the evaluation of her application to participate in the FNMA Apollo Trial Period.[3] At most, Campbell alleges irregularities with the loan modification process that occurred contemporaneously with the foreclosure. An alleged irregularity in the loan modification process, however, does not constitute an irregularity in the foreclosure proceeding. *See Williams*, 508 F. App'x at 468 ("Williams's claim of fraud relies on oral assurances during a negotiation to change the terms of the contract. Despite the fact that the negotiations may have taken place during the foreclosure process, these negotiations remained *separate from the foreclosure process itself*." (emphasis added)); *Ashford v. Bank of Am., N.A.*,

---

[3] As previously discussed, the record is ambiguous on whether the letter concerning the FNMA Apollo Trial Period is part of the written notice that Nationstar was required to provide Campbell under Mich. Comp. Laws § 600.3205a before commencing foreclosure proceedings, or whether the FNMA Apollo Trial Period is an independent loss mitigation procedure that Fannie Mae has provided for qualifying borrowers. At least one letter Campbell has attached to her complaint suggests that the FNMA Apollo Trial Period is distinct from the notice requirements of § 600.3205a. *See* R. 1-2 at Page ID #56 ("If you request a meeting with the designated agent, as outlined, foreclosure proceedings will not be commenced until 90 days after the date of this notice. For this provision to be applicable, the request for a meeting must be made *despite any independent loss mitigation options you may be pursuing with your lender*.") (emphasis added). We conclude that the promise not to foreclose while Campbell's application was under evaluation is subject to the notice requirements under Mich. Comp. Laws § 600.3205a because it does not affect the outcome of the case.

No. 13-12153, 2013 WL 5913411, at *3 (E.D. Mich. Oct. 31, 2013) (concluding that the manner in which the defendant "handled potential loss mitigation or modification . . . has no bearing on the *foreclosure procedure itself*"); *Shamoun v. Fed. Nat'l Mortg. Assoc.*, No. 12–15608, 2013 WL 2237906, at *4 (E.D. Mich. May 21, 2013) (concluding that allegations that Defendants "preclude[d] the Plaintiff from entering into a Loan Modification" were insufficient to justify setting aside the foreclosure sale). Campbell's allegations about irregularities with the process by which Nationstar evaluated Campbell for a loan modification do not constitute irregularities with how Nationstar implemented the foreclosure process against Campbell.

Campbell has also failed to sufficiently allege that she has been prejudiced by an irregularity that occurred during the foreclosure process. Campbell argues that she was prejudiced by not receiving a loan modification because she would have been in a better position to avoid foreclosure had she received a loan modification from Nationstar. Campbell's argument is flawed. Even setting aside the fact that the loan modification process is not a part of the foreclosure, Campbell has not demonstrated how she has been prejudiced by not receiving a loan modification meeting. Implicit in Campbell's claim that she would have been in a better position to preserve her interest in her property is the contention that the loan modification meeting would have prevented the foreclosure. Otherwise, Campbell would have been in the exact same position even with the benefit of the meeting: in default on her (now modified) loan with her property subject to foreclosure. *Cf. Derbabian v. Bank of Am., N.A.*, No. 14-1253, 2014 WL 5293426, at *6–7 (6th Cir. Oct. 17, 2014) (concluding that the plaintiffs did not adequately plead prejudice where the complaint does not allege that they could have either redeemed the property

at the sheriff's sale or paid off the debt owed).  As the district court noted, Mich. Comp. Laws § 600.3205c merely requires that the lender consider modifying the borrower's loan before foreclosure; it does not create for the borrower an entitlement to a modification.  Therefore, Nationstar still could legally foreclose on Campbell's property even if Campbell had the benefit of a loan modification meeting.  Although Campbell conclusively asserts that she qualified for a loan modification throughout the foreclosure of her house, she does not allege that Nationstar would have changed its course of action if the meeting had occurred.  Consequently, Campbell has not shown how she would have been in a better position to preserve her interest in the property had she met with Nationstar because the law still permitted Nationstar to foreclose without granting a modification.

Finally, even if Campbell had successfully pleaded irregularity and prejudice, Michigan law does not provide her with the remedy she seeks.  Mich. Comp. Laws § 600.3205c(8) provides that the remedy for violations that occur during the loan modification process is to convert the foreclosure-by-advertisement into a judicial foreclosure.  It does not permit a court to set aside a completed foreclosure.  *Elsheick v. Select Portfolio Servicing, Inc.*, 566 F. App'x 492, 499 (6th Cir. 2014) ("Elsheick requests that we set aside the completed foreclosure-by-advertisement proceedings and order the defendants to start anew with an offer of a loan modification.  However, the relief Elsheick seeks is not available to remedy the violation he alleged.").  Conversion of the foreclosure-by-advertisement into a judicial foreclosure can only occur if the remedy is sought prior to the completion of the foreclosure sale.  *Rugiero v. Nationstar Mortgage, LLC*, 580 F. App'x 376, 379 (6th Cir. 2014); *Holliday v. Wells Fargo*

*Bank, NA*, 569 F. App'x 366, 370 (6th Cir. 2014); *Smith v. Bank of America Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012). Campbell does not cite any authority under which a court may set aside the foreclosure sale, and we find no reason to disturb established precedent to the contrary. Campbell therefore could not reverse the foreclosure even if she had sufficiently pleaded irregularity and prejudice.

The district court properly concluded that Campbell could not show an irregularity in the foreclosure process that caused her prejudice, and that Campbell had missed her opportunity to obtain the remedy for violations of Mich. Comp. Laws § 600.3205. Accordingly, we affirm the dismissal of Campbell's foreclosure claims.

### C. Campbell's RESPA Claim

Campbell argues that the district court erred in concluding that she did not adequately plead a claim under 12 C.F.R. § 1024.41, a Consumer Financial Protection Bureau ("CFPB") regulation promulgated pursuant to section 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601 *et seq*. Section 1024.41 prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a complete loan modification, or loss mitigation, application. 12 C.F.R. § 1024.41(g). The district court dismissed Campbell's claim because the regulation was not in effect at the time of the foreclosure, and did not retroactively apply in this case. On appeal, Campbell argues that the district court should have retroactively applied 12 C.F.R. § 1024.41.

No. 14-1751, *Campbell v. Nationstar Mortgage, et al.*

The Supreme Court has reconciled "two seemingly contradictory statements found in decisions concerning the effect of intervening changes of the law." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 263–64 (1994). Usually, "a court is to apply the law in effect at the time it renders its decision." *Id.* at 264 (quoting *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 (1974)). "Retroactivity is not favored in the law," however, and courts should not construe laws to have retroactive effect "unless their language expressly requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Therefore, courts should apply the law in effect at the time they decide a case unless the law has a retroactive effect on the parties. *BellSouth Telecomms., Inc., v. Se. Tel., Inc.*, 462 F.3d 650, 657 (6th Cir. 2006); *Patel v. Gonzales*, 432 F.3d 685, 691 (6th Cir. 2005). The Supreme Court has adopted a two-part test for determining whether a statute or regulation should retroactively apply to conduct which preceded the law's enactment:

> We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absen[ce of] a clear indication from Congress that it intended such a result.

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37–38 (2006) (citations and quotation marks omitted); *see also BellSouth*, 462 F.3d at 658 (applying *Fernandez-Vargas*).

As to the first inquiry, Nationstar argues that the regulation's January 10, 2014 effective date reflects an intent not to apply it to conduct occurring prior to that date. We agree. The

CFPB promulgated a final rule on February 14, 2013, which amended Regulation X to include the procedures for evaluating and responding to loss mitigation applications that are now codified at 12 C.F.R. § 1024.41. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024) ("Mortgage Servicing Rules"). Although the rule was promulgated on February 14, 2013, the CFPB established an effective date that was almost a full year later: January 10, 2014. *Id.* at 10842. It chose to do so for a number of reasons. The CFPB considered comments from both consumer groups (generally urging earlier effective dates to expedite the rule's protections) and industry commenters (generally urging a later effective date to allow time to comply with the new rules), and struck a balance among those competing interests with the January 10, 2014 effective date. *Id.* The CFPB concluded that the effective date "will ensure that consumers receive the protections in these rules as soon as reasonably practicable" and "afford covered persons sufficient time to implement the more complex or resource-intensive new requirements." *Id.* The CFPB clearly heard comments from parties that would have preferred a more immediate effective date, but instead chose to strike a compromise. If the CFPB had intended to apply the amended Regulation X to conduct occurring before January 10, 2014, it could have ignored the industry concerns about the time allotted for implementation and made the rule effective immediately. It seems unlikely that the CFPB intended to retroactively apply the rule after establishing a later effective date in large part based on industry concerns that compliance prior to that date was not possible.

The CFPB also found that the January 10, 2014 effective date brought the amended Regulation X's effective date in line with the effective dates of other regulations that the CFPB issued to implement provisions of the Dodd-Frank Act. The CFPB issued these regulations, referred to collectively as the Title XIV Final Rules, over a span of ten days in January 2013. Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 60382-01, 60384 (October 1, 2013) ("Amendments to the 2013 Mortgage Rules"). For many of these Title XIV Final Rules, the CFPB specified that "the new regulations would apply to *transactions for which applications were received on or after January 10, 2014*," expressly disclaiming any retroactive application of the rules. *Id.* at 60385 (emphasis added). Despite the different issuance dates, the CFPB instead decided to establish a consistent effective date of January 10, 2014, believing that doing so would facilitate compliance. *Id.* When the CFPB issued the new Mortgage Servicing Rules in February, it expressly stated that the January 10, 2014 effective date allowed the CFPB to adopt "a coordinated approach to facilitate implementation" of both the Mortgage Servicing Rules and the Title XIV Final Rules. Mortgage Servicing Rules, 78 Fed. Reg. at 10842. It makes sense, therefore, that if the CFPB believed that it could facilitate implementation by setting the same effective date for both the Mortgage Servicing Rules and the Title XIV Final Rules, it also would choose to align the two sets of rules with respect to prospective application so that the subjects of the new regulation knew a date certain by when all new CFPB regulations went into effect.

The second step of the *Fernandez-Vargas* analysis supports our conclusion that 12 C.F.R. § 1024.41 should not apply retroactively. Nationstar had purchased Campbell's house at the July 11, 2013 foreclosure sale. The date that 12 C.F.R. § 1024.41 became effective—January 10, 2014—is almost six months after Nationstar completed foreclosure on Campbell's house. If we retroactively applied 12 C.F.R. § 1024.41 in this case, it would both "increase a party's liability for past conduct, [and] impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. Retroactive application of 12 C.F.R. § 1024.41 would impermissibly impose upon Nationstar the duty not to foreclose on Campbell's house after she had submitted a loss mitigation package when the foreclosure at issue in this case had been completed well before this duty ever existed. Nationstar would be liable for a then-lawful July 11, 2013 foreclosure under a regulation that would not become effective for another six months. These are precisely the "new legal consequences" that the *Landgraf* Court warned should not be attached "to events completed before [a law's] enactment." *Landgraf*, 511 U.S. at 270.

The two-part test from *Fernandez-Vargas* weighs against applying 12 C.F.R. § 1024.41 retroactively. The district court's conclusion that the regulation did not apply retroactively was correct, and therefore its decision to dismiss Campbell's RESPA claim was proper.

### D. Campbell's Negligence Claim

Finally, Campbell argues that Fannie Mae owed her a duty "of full participation in HAMP, including its adherence to all HAMP requirements and adhering to the terms of the modification agreement." R. 1-2 at Page ID #21. HAMP is an acronym for the federal Home Affordable Modification Program created pursuant to the Emergency Economic Stabilization

Act, 12 U.S.C. § 5201, which creates incentives for lenders to offer borrowers more favorable loan modifications. *Olson*, 576 F. App'x at 511–12; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556–57 (7th Cir. 2012). The district court rejected Campbell's argument, adhering to the view held by "the vast majority of courts" that homeowners do not have a private right of action under HAMP. R. 8 at Page ID #369 (quoting *Nafso v. Wells Fargo Bank, N.A.*, No. 11-10478, 2011 WL 1575372, at *4 (E.D. Mich. Apr. 26, 2011)). The district court also concluded that Campbell did not identify any Michigan state decision holding that a plaintiff may recast a HAMP violation as a negligence claim. On appeal, Campbell argues that the district court incorrectly applied *Mik v. Federal Home Loan Mortgage Corp.*, 743 F.3d 149 (6th Cir. 2014) when it concluded that Campbell could not use Nationstar and Fannie Mae's failure to evaluate her loan for modification as grounds for undoing the foreclosure sale. We affirm the district court's decision because, even if we permitted Campbell to use an alleged violation of HAMP as a basis for her negligence claim, Campbell has failed to adequately plead duty or breach.

Under Michigan law, the *prima facie* case of tortious negligence has four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) the plaintiff suffered damages, and (4) the breach of duty caused the damages. *Haliw v. Sterling Heights*, 627 N.W.2d 581, 588 (Mich. 2001); *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 177 (Mich. 1993). In order to satisfy the causation requirement, the plaintiff must prove both causation in fact and legal, or proximate, causation. *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. 1994). "Cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct." *Haliw*, 627 N.W.2d at 588. "On the other hand, legal cause or 'proximate

cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner*, 516 N.W.2d at 479. Michigan does not adhere to the doctrine of negligence *per se*. *Zeni v. Anderson*, 243 N.W.2d 270, 280–82 (Mich. 1976). Instead, the violation of a statute creates a rebuttable presumption of negligence. *Candelaria v. B.C. Gen. Contractors, Inc.*, 600 N.W.2d 348, 356 n.5 (Mich. Ct. App. 1999). Violations of rules or regulations, on the other hand, are only evidence of negligence. *Kennedy v. Great Atl. & Pac. Tea Co.*, 737 N.W.2d 179, 186 (Mich. Ct. App. 2007); *Johnson v. Bobbie's Party Store*, 473 N.W.2d 796, 801 (Mich. Ct. App. 1991).

Campbell alleges that Fannie Mae breached a duty owed to her under the regulations that establish the HAMP program. While the allegations that Fannie Mae failed to comply with HAMP regulations may provide evidence of negligent conduct under Michigan law, Campbell must still show that the HAMP regulations impose on servicers a duty of care owed to borrowers. *See Kennedy*, 737 N.W.2d at 186 ("Plaintiff contends that defendants breached the duty to provide a safe workplace as required by § 9 of MIOSHA, MCL 408.1009, and by administrative regulations enacted under MIOSHA. . . . However, MIOSHA and the regulations enacted under MIOSHA apply only to the relationship between employers and employees and therefore do not create duties that run in favor of third parties."). As the district court correctly observed, Michigan courts have not recognized that such a duty exists under HAMP. Its decision accords with the decisions of other Michigan federal district courts that have declined to find a duty exists under Michigan law. *E.g.*, *Ahmad v. Wells Fargo Bank, NA*, 861 F. Supp. 2d 818, 826–28 (E.D. Mich. 2012); *Jovanovic v. Bank of New York Mellon*, No. 13-11851, 2013

WL 4042613, at *4 (E.D. Mich. Aug. 9, 2013) (observing, in a non-HAMP foreclosure action, that tort actions based on contract require a duty "separate and distinct from the defendant's contractual obligations"); *Mazur v. Washington Mut. Bank, F.A.*, No. 09-13371, 2011 WL 108926, at *7 (E.D. Mich. Jan. 10, 2011) (discussing federal lending laws other than HAMP).

Moreover, even if Fannie Mae owed Campbell a duty of care under the HAMP guidelines, Campbell cannot show that a breach of that duty caused her injury. When a plaintiff seeks to use the violation of a law to establish negligence, Michigan law requires the plaintiff to show that (1) the law was intended to protect against the result of the violation, (2) the plaintiff is a member of the class intended to be protected by the law, and (3) the violation proximately caused the plaintiff's injury. *Klanseck v. Anderson Sales & Serv., Inc.*, 393 N.W.2d 356, 360 (Mich. 1986); *Vasilakis v. Trott & Trott, P.C.*, No. 306122, 2012 WL 5854363, at *6 (Mich. Ct. App. Nov. 15, 2012), *leave to appeal denied*, 836 N.W.2d 165 (2013). Campbell's complaint alleges that she was harmed by "[t]he negligent actions of Defendant Fannie Mae in proceeding with foreclosure publication and the Sheriff's Sale without completing a proper investigation and complying with the federal guidelines of Plaintiff's modification evaluation." R. 1-2 at Page ID #21–22. As previously discussed, however, Nationstar could still legally foreclose on Campbell's property even if Nationstar and Campbell had met to discuss a loan modification. Mich. Comp. Laws § 600.3205c. The injury suffered by Campbell—foreclosure—was therefore not "caused" by Fannie Mae's alleged failure to adhere to HAMP guidelines.

HAMP does not provide plaintiffs with a private right of action, and Campbell has failed to plead essential elements of a negligence claim against Fannie Mae. Accordingly, the district court properly dismissed Campbell's negligence claim.

## IV. CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.