# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 18-10508

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2019

Lyle W. Cayce
Clerk

MICHAEL GERMAIN,

      Plaintiff - Appellant

v.

US BANK NATIONAL ASSOCIATION, as Trustee for Morgan Stanley
Mortgage Loan Trust 2006-7, Mortgage Pass-Through Certificates, Series
2006-7; OCWEN LOAN SERVICING, L.L.C.,

      Defendants - Appellees

———————————

Appeal from the United States District Court
for the Northern District of Texas

———————————

Before WIENER, DENNIS, and OWEN, Circuit Judges.

WIENER, Circuit Judge

### I. FACTS AND PROCEDURAL HISTORY

In 2005, Plaintiff-Appellant Michael Germain ("Germain") executed a deed of trust in favor of Morgan Stanley to refinance his home loan. Defendant-Appellee Ocwen Loan Servicing, LLC ("Ocwen") began servicing his loan in 2012. In 2014, U.S. Bank N.A., as Trustee for Morgan Stanley Mortgage Loan Trust 2006-7, Mortgage Pass-Through Certificates, Series 2006-7 ("U.S. Bank"), became the holder of the note secured by that mortgage (Ocwen and U.S. Bank are collectively "the Defendants"). Germain has been in and out of default since 2009 and made his last loan payment in 2014.

No. 18-10508

After becoming the loan servicer on July 7, 2012, Ocwen wrote to Germain outlining his loan assistance options. Ocwen did not receive a response from Germain, so it scheduled the property for foreclosure.

In August 2012, after Ocwen had initiated the foreclosure, Germain submitted his first of four loss mitigation applications. Ocwen denied Germain's initial request for loan modification because the owner of the loan did not allow modification. Germain subsequently made a "significant" payment that brought the loan out of default, so Ocwen stopped processing that loss mitigation application.

By August 2013, Germain was again in default, so he filed a second loss mitigation application. Ocwen again denied Germain's request for loan modification, alerted him that he might be eligible for other options, and identified Morgan Stanley as the owner of the loan. Germain filed for bankruptcy the following month. Ocwen placed him on a repayment plan and stopped processing his second loss mitigation application. Germain's bankruptcy was later dismissed.

Yet again in default, Germain filed a third loss mitigation application in February 2014. Ocwen again denied Germain's request for loan modification and again informed him that he was eligible for other loss mitigation options, including a short sale. Germain did not take advantage of any of those options.

More than a year later, Ocwen accelerated the loan and scheduled the property for foreclosure in May 2015. Germain filed suit in state court to prevent the foreclosure, and the Defendants removed the suit to federal court. In his fourth amended complaint, Germain alleged the following claims against the Defendants: (1) violations of the Real Estate Settlement Procedure Act ("RESPA"); (2) violations of the Texas Debt Collection Act ("TDCA"); (3) promissory estoppel; and (4) violation of the federal Declaratory Judgment Act. Germain sought actual, statutory, and exemplary damages or declaratory and

2

No. 18-10508

injunctive relief.[1] The district court granted the Defendants' motion for summary judgment and dismissed all of Germain's claims.[2] He now appeals that grant of summary judgment.

## II. DISCUSSION

### A. Standard of Review

We review the grant of summary judgment *de novo* and apply the same standard as the district court.[3] Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] If the moving party meets that burden, the non-moving party must show the existence of a genuine issue for trial.[5] The evidence and all inferences must be viewed in the light most favorable to the  non-movant.[6] Conclusional allegations, unsubstantiated assertions, and a mere "scintilla" of evidence are insufficient to defeat summary judgment.[7]

### B. Germain's RESPA Claims

Section 1024.41 of the Code of Federal Regulations describes the procedures that mortgage servicers must follow when processing loss mitigation applications.[8] Germain alleged that the Defendants violated § 1024.41(c) and (d). Section 1024.41(c) states that, on receipt of a complete loss mitigation application more than 37 days before a foreclosure sale, the loan servicer must (1) "[e]valuate the borrower for all loss mitigation options

---

[1] *Germain v. U.S. Bank Nat'l Ass'n*, 2018 WL 1517860, at *1 (N.D. Tex. March 28, 2018).

[2] *Id.* at *10.

[3] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 416 (5th Cir. 2006)).

[4] Fed. R. Civ. P. 56(a).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).

[6] *FDIC v. Dawson*, 4 F.3d 1303, 1306 (5th Cir. 1993).

[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[8] 12 C.F.R. § 1024.41.

available to the borrower" and (2) "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."[9]

Section 1024.41(d) states:

> If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.[10]

Additionally, § 1024.41(i) states: "A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account."[11]

The district court dismissed Germain's RESPA claims. The court held that the Defendants (1) were not required to plead § 1024.41(i) as an affirmative defense, (2) had complied with § 1024.41 over the life of Germain's loan, and (3) were required to comply with each of the requirements of § 1024.41 only once.[12]

On appeal, Germain first alleges that the district court erred in holding that § 1024.41(i) is not an affirmative defense. That is an issue of first impression for this court.

---

[9] 12 C.F.R. § 1024.41(c)(1).

[10] 12 C.F.R. § 1024.41(d).

[11] 12 C.F.R. § 1024.41(i). The updated version, effective October 19, 2017, reads: "A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application."

[12] *Germain*, 2018 WL 1517860, at *6.

No. 18-10508

Rule 8(c) of the Federal Rules of Civil Procedure requires parties to "affirmatively state any avoidance or affirmative defense."[13]

> [T]he rule's reference to "an avoidance or affirmative defense" encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer.[14]

A defendant that fails to raise an affirmative defense in its responsive pleading generally waives it "unless the 'defendant raises the issue at a pragmatically sufficient time' and 'the plaintiff is not prejudiced in its ability to respond.' The prejudice inquiry focuses on 'whether the plaintiff had sufficient notice to prepare for and contest the defense.'"[15]

Germain relies on *Amarchand v. CitiMortgage, Inc.*, a case out of the Middle District of Florida, contending that § 1024.41(i) is an affirmative defense because it is a matter of avoidance. The *Amarchand* court stated, on a motion to dismiss, that the defendants § 1024.41(i) contention was "better raised as an affirmative defense."[16] Germain maintains that he was prejudiced

---

[13] Fed. R. Civ. P. 8(c).

[14] Wright & Miller, Affirmative Defenses—Defenses Not Mentioned in Rule 8(c), 5 Fed. Prac. & Proc. Civ. § 1271 (3d ed.). "The rule refers to the nature of a defendant's pleading: A matter is an 'avoidance or affirmative defense' only if it assumes the plaintiff proves everything he alleges and asserts, even so, the defendant wins. Conversely, if, in order to succeed in the litigation, the defendant depends upon the plaintiff failing to prove all or part of his claim, the matter is not an avoidance or an affirmative defense. A defendant does not plead affirmatively when he merely denies what the plaintiff has alleged." *Hertz Commercial Leasing Div. v. Morrison*, 567 So. 2d 832, 835 (Miss. 1990).

[15] *NewCSI, Inc. v. Staffing 360 Solutions, Inc.*, 865 F.3d 251, 259 (5th Cir. 2017) (quoting *Lee v. United States*, 765 F.3d 521, 523–24 (5th Cir. 2014) (holding that the defense was not waived when it was argued in multiple motions and the pretrial order)); *see also Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (holding that the defense was waived when it contained more than a pure issue of law and would have changed plaintiff's trial strategy).

[16] *Amarchand v. CitiMortgage, Inc.*, 2016 WL 1031303, at *2 (M.D. Fla. Mar. 9, 2016).

by the Defendants' assertion of § 1024.41(i) for the first time on summary judgment because he had already completed discovery without having received fair notice of that defense.

When "a particular issue arises by logical inference from the well-pleaded allegations in the plaintiff's complaint," that issue is generally not an affirmative defense because "a simple denial of the allegations in the complaint relating to a necessary or intrinsic element of the plaintiff's claim is sufficient to put those matters in issue."[17] Here, Germain alleged that the Defendants did not comply with § 1024.41. The Defendants denied this allegation, insisting that they had complied with that section. That is a denial or direct contradiction of Germain's claim, not an affirmative defense. The Defendants did not expressly rely on § 1024.41(i) in their answer, but the use of § 1024.41(i) in their motion for summary judgment is merely an expansion of the denial in their answer.[18] The Defendants essentially argued that they could not have violated RESPA by failing to comply with § 1024.41 because they did, in fact, comply with that section. These are the reasons why we agree with the district court's determination that the Defendants were not required to plead § 1024.41(i) as an affirmative defense.

Second, the district court held that the Defendants only had to comply with the regulation for one loss mitigation application.[19] Germain insists that this holding is in error because it makes § 1024.41 retroactive.[20]

---

[17] Wright & Miller, *supra* § 1271.

[18] Because § 1024.41(i) is merely an expansion of the Defendants' denial, Germain was not prejudiced by the Defendants' failure to mention the specific provision until the summary judgment stage.

[19] *Germain*, 2018 WL 1517860, at *6.

[20] The word retroactive does not appear in the district court's opinion.

No. 18-10508

Section 1024.41 became effective on January 10, 2014.[21] To determine whether a regulation may be applied retroactively, (1) "a reviewing court . . . examines whether the regulation clearly expresses whether it is to be applied retroactively," and, (2) "[i]f there is no clear expression as to retroactivity, the court then considers whether the regulation would have a retroactive effect."[22] This determination "demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment."[23] "There is a retroactive effect when the new regulation 'takes away or impairs vested rights . . . *creates a new obligation, imposes a new duty*, or attaches a new disability, in respect to transactions or considerations already past.'"[24] If a regulation has retroactive effect, "we then apply the presumption against retroactivity by construing the [regulation] as inapplicable to the event or act in question."[25]

This court has not addressed the retroactivity of this provision, but some of our district courts have held that the regulation's requirements should not be applied to loss mitigation applications submitted prior to the effective date.[26] Applying basic retroactivity analysis, the Sixth Circuit, in *Campbell v. Nationstar Mortgage*, held that the "January 10, 2014 effective date reflects an intent not to apply it to conduct occurring prior to that date."[27] In analyzing whether § 1024.41's prohibition on foreclosures when a borrower has submitted

---

[21] 12 C.F.R. § 1024.41. An updated version of the regulation went into effect on October 19, 2017.

[22] *Perez Pimentel v. Mukasey*, 530 F.3d 321, 326 (5th Cir. 2008).

[23] *I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001) (quoting *Martin v. Hadix*, 527 U.S. 343, 357–58 (1999)); *see also Lopez Ventura v. Sessions*, 907 F.3d 306, 314 (5th Cir. 2018).

[24] *Perez Pimentel*, 530 F.3d at 326 (emphasis added) (quoting *St. Cyr*, 533 U.S. at 321).

[25] *Fernandez-Vargas v. Gonzalez*, 548 U.S. 30, 37–38 (2006) (quoting *St. Cyr*, 533 U.S. at 316).

[26] *See, e.g.*, *Searcy v. Citimortgage, Inc.*, 2015 WL 11120981, at *4 (N.D. Tex. Sept. 16, 2015) (citing *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 297 (6th Cir. 2015)).

[27] *Campbell*, 611 F. App'x at 297.

a loss mitigation application should apply retroactively to a foreclosure that was instituted six months prior to the regulation's effective date, the Sixth Circuit held that the regulation could not apply retroactively because doing so "would impermissibly impose upon [the defendant] the duty not to foreclose on Campbell's house after she had submitted a loss mitigation package when the foreclosure at issue in this case had been completed well before this duty ever existed."[28] The Sixth Circuit further reasoned that (1) in choosing the effective date, the Consumer Financial Protection Bureau ("CFPB") had balanced the competing concerns of consumers and servicers, and (2) it was "unlikely that the CFPB intended to retroactively apply the rule after establishing a later effective date in large part based on industry concerns that compliance prior to that date was not possible."[29]

Here, the district court relied on its reasoning in *Allen v. Wells Fargo Bank, N.A.*[30] In *Allen*, the court reasoned that a servicer's conduct prior to the effective date should count for application of § 1024.41(i) because "[t]o interpret § 1024.41 otherwise would in effect be to read . . . the limitation on 'Duplicative requests' . . . out of the regulation for an entire category of borrowers, without any clear intent from the Bureau of Consumer Financial Protection to do so."[31]

*Campbell* and *Allen* are not inconsistent. On the one hand, we agree with the Sixth Circuit that § 1024.41 is not retroactive. If it were, the regulation would impose a duty on servicers before the duty existed and before servicers were aware of its requirements.[32] Section 1024.41 does not require a servicer to have complied with its requirements in response to a loss mitigation application prior to the effective date. *Campbell* did not consider the situation

---

[28] *Id.* at 298.

[29] *Id.* at 297.

[30] 2017 WL 3421067 (N.D. Tex. Aug. 9, 2017).

[31] *Id.* at *4.

[32] *See Campbell*, 611 F. App'x at 298.

here, in which the servicer did comply with the regulation's requirements but did so before the regulation took effect. On the other hand, if the servicer complied with the requirements of the provision prior to the effective date, that compliance must be credited to the servicer because it need only comply with such a requirement once.[33]

The apparent purpose of the regulation is not to make already compliant servicers repeat their compliance actions, but rather to bring noncompliant servicers into compliance. Section 1024.41 is a forward-looking provision, but it accounts for a servicer's past actions by requiring only one compliance per requirement. "A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account."[34]

In response to Germain's February 2014 loss mitigation application, the Defendants provided "notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."[35] This writing notified Germain that (1) his "loan [was] evaluated for all loss mitigation options available," (2) the Defendants were not able to offer loan modification because the owner of his loan did not allow modification, and (3) the Defendants were able to offer a

---

[33] *See* 12 C.F.R. § 1024.41(i).

[34] 12 C.F.R. § 1024.41(i). The updated version, effective October 19, 2017, reads: "A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." *See also Wentzell v. JPMorgan Chase Bank*, 627 F. App'x 314, n.4 (5th Cir. 2015) (per curiam) (remarking that while the plaintiffs had not alleged a violation of § 1024.41 they would not have been able to state a claim under the regulation because the regulation "appl[ies] only to a borrower's first loss mitigation application" and their "claims relate[d] to later alleged loan modifications").

[35] 12 C.F.R. § 1024.41(c)(1)(ii).

short sale as a loss mitigation option.[36] This notice satisfied the Defendants obligations under 12 C.F.R. § 1024.41(c)(1).

Although the February 2014 response does not repeat the name of the owner of the mortgage note, that requirement is inapplicable in this limited circumstance because (1) the servicer had previously provided the mortgagor the name of the note owner and (2) that ownership had not changed.[37] It would be absurd, and contrary to the provision regarding duplicative requests, to require repeated compliance with this requirement.[38] The regulation builds in sufficient protections for borrowers; repeated compliance is not necessary for their protection in this case.

The district court correctly ruled that Germain failed to raise a genuine issue of material fact regarding the Defendants' compliance with 12 C.F.R. § 1024.41 and properly dismissed his RESPA claims.

### C. Germain's TDCA Claims

Germain alleged that the Defendants violated the TDCA by (1) "threatening to sell [his] Property at a foreclosure sale without complying with RESPA," and (2) "urging [him] to submit detailed loss mitigation applications, although Defendants knew that [his] application would be treated as a loan modification application which would be summarily denied without consideration."[39] The district court dismissed these claims, holding that (1) the Defendants complied with RESPA and (2) Germain "fail[ed] to bring . . .

---

[36] This letter also notified Germain again that the owner of his loan did not allow modification and provided other loss mitigation options.

[37] A previous notice had notified Germain that (1) the Defendants were not able to offer loan modification because the owner of his loan did not allow modification, (2) Morgan Stanley Mtg Trust MSM was the owner of his loan, and (3) the Defendants were able to offer either a sale or deed-in-lieu as loss mitigation options.

[38] Of course, for subsequent applications, compliance with a requirement might be completed if the relevant information has changed.

[39] *Germain*, 2018 WL 1517860, at *6.

evidence showing that [the Defendants] intended to mechanically deny [his] applications."[40] Germain's claim that the Defendants violated Tex. Fin. Code § 392.301(a)(8) is based on his allegations that they violated RESPA. Because the district court did not err in dismissing Germain's RESPA claims, neither did it err in dismissing this TDCA claim.

Germain's second TDCA claim is based on Tex. Fin. Code § 392.304(a)(14), (19) which states:

> "a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:
>
> . . . .
> (14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business;
>
> . . . .
> [or] (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

Germain argues that the Defendants violated these provisions "by holding out the possibility of a [loan] modification" repeatedly, thereby inducing him to submit loss mitigation applications and disclose his financial information. Not so: The Defendants did not promise *loan modification* by asking Germain for *loss mitigation* applications. Neither has Germain demonstrated that the Defendants asked for these applications knowing that they would be denied. To the contrary, Germain was offered several loss mitigation options following his submission of those applications. Germain thus has not raised a fact issue regarding the alleged false representations, and the district court did not err in dismissing Germain's second TDCA claim.

---

[40] *Id.* at 7.

*D. Germain's Remaining Claims*

We also affirm the district court's dismissal of Germain's remaining claims and requests for relief. They are based on the underlying RESPA or TDCA claims and are therefore moot.

*E. Ad Hominem*

The history of this case demonstrates beyond cavil that Germain has spent the last 10 years gaming the system through a series of applications for loan modification, a flawed bankruptcy filing, and the institution of this lawsuit. Doing so has enabled him to achieve his one overarching goal: The prolonged occupancy of his residence with little or no payment on his mortgage debt. With the help of cunning counsel, Germain used the intended *shield* of RESPA, TDCA, and various state and federal laws as a *sword* to avoid (or at least minimize) his mortgage payments while continuing the decade-long occupancy of his encumbered house. Today's termination of Germain's abuse of the system is long overdue. We caution Germain, and his present and future counsel, if any, that further machinations to prolong this litigation or delay foreclosure proceedings could and likely will be met with sanctions.

*F. Conclusion*

The dismissal with prejudice of Germain's lawsuit is affirmed for the forgoing reasons.

AFFIRMED